850 So.2d 819 (2003)
STATE of Louisiana
v.
Alexander SHEPARD.
No. 03-KA-268.
Court of Appeal of Louisiana, Fifth Circuit.
June 19, 2003.
*821 Paul D. Connick, Jr., District Attorney, Andrea F. Long, Terry M. Boudreaux, Vincent Paciera, Jr., Assistant District Attorneys Gretna, LA, for Appellee.
Prentice L. White, Baton Rouge, LA, for Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS and SUSAN M. CHEHARDY.
MARION F. EDWARDS, Judge.
Defendant/appellant Alexander Shepard appeals his conviction for armed robbery and attempted armed robbery. We affirm.
The Jefferson Parish District Attorney's Office filed a bill of information charging Shepard with one count of attempted armed robbery in violation of LSA-R.S. 14:27:64 and one count of armed robbery in violation of LSA-R.S. 14:64. Following his arraignment on the charges, Shepard entered a plea of not guilty to both counts. On May 9, 2001, his motion to suppress identification was heard and denied, and subsequently, he waived his right to a jury and proceeded to trial.
After a one-day judge trial, Shepard was found guilty and was sentenced to 30 years at hard labor without benefit of parole, probation, or suspension of sentence. A multiple offender bill of information was later filed alleging that Shepard had previously been convicted of five felonies. Following the multiple offender hearing Shepard was found to be a three time violent felony offender. After waiving all delays, he was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence. This appeal followed.
The testimony at the hearing on the motion to suppress and at trial reflects that, in the early morning hours of February 10, 2001, Mark Guidry and Jimmy Rodrigue arrived at the Country Club Lounge near Garden Road and the Westbank Expressway. The parking lot was brightly lit. After parking their car, Guidry and Rodrigue exited the vehicle and observed an individual walk from behind their car and up alongside the passenger side of the vehicle. Guidry testified that he made eye contact with the man as he walked around the car. When the individual reached the front of the car, he raised his shirt, pulled out a chrome pistol, and demanded Guidry's wallet and jewelry. The gunman then pointed the weapon at Rodrigue and ordered him to place his hands on the hood of the car. At that time, Guidry reached up and grabbed the gun with both hands holding the hammer down to prevent the gun from being fired. Their faces were inches apart. Guidry and the gunman fought over the pistol until eventually, the gunman wrested it from Guidry's hands. Guidry then jumped in front of his vehicle and made his way inside the Country Club Lounge where he asked for someone to call 911. After Guidry escaped, the gunman ordered Rodrigue to lie on the ground and proceeded to take money out of his pockets. Approximately $40 to $45 was stolen from Rodrigue. The police arrived within minutes.
*822 Detective Scott Guillory testified that he responded to the armed robbery call and was able to interview the victims and obtain a description of the perpetrator as being a 6' to 6'2" black male wearing a blue flannel shirt, a blue bandana, and a "bebop" style hat. (At trial, Guidry had also added that the suspect was wearing tennis shoes.) Detective Craig Bonnette testified that, after hearing the broadcasted description of the armed robbery suspect, he was able to apprehend two individuals, one who matched the description of the suspect. Guillory then escorted the victims to the location where the two suspects had been stopped. Guidry testified that when they arrived at the location, he exited the vehicle and waited for the officers to remove a suspect from the car. Guidry testified that the man the police showed him was not the gunman and as he turned to get back into the car, the police informed him that they had someone else for him to see. When the second individual exited the vehicle, Guidry made a positive identification of Shepard as being the gunman. Guidry testified that when he viewed Shepard at the police vehicle, Shepard had the same physical features as the gunman and was also wearing the same type of clothing except for the bandana and cap. Guidry then pointed out to the investigating officers that the gunman was wearing a blue bandana at the time of the robbery. Subsequently, Rodrigue exited the police vehicle and made an identification of defendant as being the perpetrator. Afterwards, Shepard was handcuffed and Detective Guillory performed a pat down search of defendant, discovering a blue bandana and a hat.
At trial, Shepard denied any involvement in the incident. He testified that he had gotten off work at a Shell station, where he was a rigger, at about 2:00 in the afternoon, and went to a second job selling tennis shoes. He was wearing jeans, work boots, a gray T-shirt, a flannel shirt and his welding cap. This is common attire, to protect the hair and face. He was walking with his cousin from the Happy Hour (lounge) toward the Shell station. His was the only defense testimony.
On appeal, Shepard contends that the identification procedure was overly suggestive in that there was only one suspect shown to the victims that matched their description of the assailant's height, weight, and clothing. Additionally he alleges that the victims' description was too general, and that one of the victims admitted that the robbery only lasted for a couple of minutes and conceded that he was greatly distracted by the perpetrator's gun to his head.
A defendant who seeks to suppress an identification must prove both that the identification itself was suggestive and that there was a likelihood of misidentification as a result of the identification procedure.[1] Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony.[2] Even if the identification could be considered suggestive, it is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure.[3]
*823 There are five factors to consider in determining if an identification is reliable: 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness' degree of attention; 3) the accuracy of the prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and, 5) the time between the crime and the confrontation. In evaluating the defendant's argument, the reviewing court may consider all pertinent evidence adduced at the trial, as well as at the hearing on the motion to suppress the identification.[4] A trial court's determination of the admissibility of an identification should be accorded great weight and will not be disturbed on appeal unless the evidence reveals an abuse of discretion.[5]
One-on-one identifications are not favored; however, under certain circumstances, they are admissible at trial.[6] Such identifications have been found to be admissible when the identification occurred in close proximity to the time of the offense and the suspect is presented for immediate identification.[7] Such a process assures reliability and fosters prompt release of innocent suspects.[8] Although there was a certain degree of focus on the suspect here, the testimony of Guidry, Rodrigue and Detective Bonnette reveals that nothing was done by the officers to force or coerce victims into identifying Shepard as the perpetrator. Additionally, both victims were separated at the time of the identification thereby lessening the suggestiveness of the identification procedure in the instant case. However, even if the identification procedure were considered suggestive, by applying the appropriate factors we do not find there was a substantial likelihood of misidentification.
Guidry testified that he was able to view Shepard for a period of two to three minutes in a well-lighted area. During that period, he maintained eye contact with Shepard and, at the point that defendant brandished a gun and demanded his wallet and jewelry, he stood face-to-face with Shepard at a distance of approximately six inches. Guidry also testified that, during the ensuing struggle for the gun, he was looking at Shepard's face the entire time.
As to his degree of attention and the accuracy of the description, Guidry testified at trial that the description of the perpetrator that he gave to investigating officers was that of a 6'1" to 6'2", 170-180 pound black male, wearing a blue flannel shirt, jeans, tennis shoes, a blue bandana, and a "bebop" style hat. Shepard is a 6'1", 180 pound black male and, at the time of his apprehension, was wearing a blue flannel shirt, blue jeans, and lace up work boots, but was not wearing a "bebop" style hat or a blue bandana. However, a subsequent pat down search revealed that Shepard had a blue bandana and cap in his pocket.
We note that there were some discrepancies in Rodrigue's testimony on relative to identification. For example, at the motion hearing he described the perpetrator as having worn a white-checkered shirt. Further, at trial Rodrigue testified that *824 the light was shining in his eyes, and that his eyes were bad. However, in arriving at its verdict, the trial court found as a matter of fact that the same person robbed Mr. Guidry and Mr. Rodrigue. The Court stated:
In this case there were two eyewitnesses. Mr. Rodrigue, the defense successfully impeached Mr. Rodrigue. Mr. Rodrigue ... was definitely robbed.... Mr. Rodrigue testified that heand it was sort of obvious from the witness stand, he has bad eyes. The light was in his eyes, he didn't get a good look, and while the Court pretty much believes that in his prior testimony he meant to say blue flannel shirt and white shirt (sic) that's not how it all played out and so the court is going to discount Mr. Rodrigue's testimony in deciding this case.
The court emphasized Guidry's close contact with Shepard, and the clarity and conviction of his identification. The time between the confrontation and offenses occurred within a relatively short period of time, approximately 15 to 20 minutes. After separately viewing both suspects, Guidry made a positive identification of Shepard as being the perpetrator, identifying him by both his facial features and clothing. When Officer Guillory was asked how sure the victims seemed about the identification, the detective answered, "Very, very positive."
Considering all the factors present her, we do not find there was a substantial likelihood of misidentification in the instant procedure. Consequently, the trial court did not err in denying the Motion to Suppress.
We have reviewed the record for errors patent[9] and note that the trial court failed to advise Shepard of the prescriptive period for filing post-conviction relief as required by LSA-C.Cr.P. art. 930.8. Thus, we will remand the case with an order for the trial judge to send written notice to Shepard that his application for post-conviction relief must be filed no more than 2 years after the judgment of conviction and sentence has become final. The trial judge is to send this notification within ten days of the rendering of this opinion, then file written proof in the record that Shepard received the notice.[10]
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] State v. Prudholm, 446 So.2d 729, 738 (La. 1984); State v. Payne, 00-1171 (La.App. 5 Cir. 12/13/00), 777 So.2d 555, 558-559, writ denied, 01-118 (La.11/21/01), 802 So.2d 626.
[2] Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).
[3] State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916, 932, cert. denied, 99-8224 (La.5/15/00), 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000).
[4] Manson v. Brathwaite, supra; State v. Higgins, 01-368 (La.App. 5 Cir. 10/17/01), 800 So.2d 918; State v. Clennon, 98-1370 (La. App. 5 Cir. 6/30/99), 738 So.2d 161, 164.
[5] State v. Clennon, supra.
[6] State v. Jackson, 96-661 (La.App. 5 Cir. 4/9/97), 694 So.2d 440, 447, writs denied, 97-1050 (La.10/13/97), 703 So.2d 609 and 97-1255 (La.10/13/97), 703 So.2d 612.
[7] State v. Robinson, 404 So.2d 907, 909-910 (La.1981).
[8] Id.
[9] La.C.Cr. P.art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App.5 Cir.1990).
[10] See State v. Pierre, 02-838 La.App. 5 Cir. 12/30/02, 834 So.2d 1229.