I «WALTER J. ROTHSCHILD, Judge.
The Jefferson Parish District Attorney filed a bill of information charging defendant, Shannon Brown, with forcible rape in violation of LSA-R.S. 14:42.1 and second degree kidnapping in violation LSA-R.S. 14:44.1. The defendant pled not guilty at arraignment. The State severed the forcible rape charge. On January 22, 2004, the matter proceeded to trial on the charge of second degree kidnapping before a twelve-person jury, which found defendant guilty as charged.
On February 18, 2004, the trial judge denied defendant’s “MOTION IN ARREST OF JUDGMENT AND ALTERNATIVELY MOTION FOR NEW TRIAL.” Thereafter, the judge sentenced defendant to thirty years of imprisonment at hard labor, with the first two years without benefit of parole, probation, or suspension of sentence. The trial court also denied defendant’s motion for reconsideration of sentence, and granted his motion for appeal filed that day.
*494 |sThe State filed a multiple offender bill of information alleging defendant to be a third felony offender based on prior convictions of possession of cocaine and simple burglary of an inhabited dwelling, allegations that defendant denied. According to the commitment of May 18, 2004 and the waiver of rights form in the record, defendant stipulated that he was a third felony offender as alleged, the trial judge vacated the original sentence, and sentenced defendant to twenty-six years and eight months at hard labor to run concurrently with any other sentence defendant was serving.

FACTS

The victim, Elonia Weber, and defendant were involved in a three-year relationship, during which the victim and defendant had a child together. However, the victim terminated her relationship with defendant sometime in late May or early June of 2002. On June 26, 2002, the victim finished her shift at midnight at Kentucky Fried Chicken. Thereafter, she went to the house of a friend, Melvin Adams, who lived at 2708 Max Drive in Harvey. The victim was sitting in the driver’s seat and Adams was in the passenger seat of the victim’s vehicle when defendant and a companion, Toka, approached. Defendant went to the driver’s side and opened the door, while the companion stood at the passenger side of the car. According to Adams, defendant told the victim to move over, but she could not move into the passenger seat because Adams was sitting there. Defendant asked Adams to exit, and told the victim to get out of the car. Thereafter, defendant made the victim reenter the car. Adams said that he did not see defendant with a weapon, but that the defendant “flexed like he had something.” Thereafter, Adams went inside his house and telephoned the victim’s residence to inform her family of the preceding events.
Laborah Jones, the victim’s grandmother, testified that she and the victim’s sister called the victim’s cell phone a “couple of times” before the victim |4answered. The victim testified that defendant had taken the phone away, but allowed her to answer the phone when Mrs. Jones called. When Mrs. Jones asked her if she was ok, the victim replied affirmatively. However, Mrs. Jones said the victim’s voice was trembling. Mrs. Jones asked where she was, and the victim said that she was “[d]own the street.” When Mrs. Jones asked if the victim wanted her to call the police, the victim replied affirmatively.
Officer Maggie Darling of the Jefferson Parish Sheriffs Office responded to the Jones’ residence at approximately 2:13 a.m. Mr. and Mrs. Jones related what they believed had happened to their granddaughter. Officer Darling also interviewed Adams, and thereafter reported the victim as a missing person, listing defendant as the suspect in the incident.
Meanwhile, the victim was in the car with defendant and his companion, Toka. The victim testified that she initially was sitting between the bucket seats in the middle of defendant and Toka. However, after Adams left, defendant was in the driver’s seat, she was in the passenger’s seat, and Toka was in the back seat. Defendant was talking to her, but she could not recall what he said. But, defendant became angry and struck her in the face. The blow caused her nose to bleed and her lip to swell. Defendant started driving, and held her neck down in the seat so she could not see where they were going. The victim begged defendant to let her go. Instead, defendant made her sit up. She noticed that they were approaching the Crescent City Connection. Defendant told her that she better not make any false moves or Toka was “going to do what he had to do.” The victim testified that she *495 took this statement to mean that Toka had a gun.
After crossing the bridge, defendant drove into a housing project in New Orleans, took the keys, and left her in the car with Toka “to watch her.” She asked Toka why he was going along with defendant, but he never answered her. Defendant returned to the car, but left again. After finally returning to the car, | ^defendant drove to the Siesta Motel on the west bank. Defendant asked Toka to leave so that he and the victim could talk. While in the parking lot, defendant asked her why she did not want to be with him anymore. Thereafter, defendant drove from the parking lot to find Toka and, upon locating him, the defendant drove the three of them back to the motel.
All three of them entered the motel room, and Toka and defendant went inside the bathroom. The victim said that she did not try to escape while she was alone because she was frightened. When they came out, defendant told Toka to get some breakfast across the street. Defendant continued the conversation about his wanting to resume their relationship. Defendant then asked her if she wanted to shower with him. When she declined, defendant sounded like he was getting upset. Defendant asked her if she wanted to have sex, and she again said no. However, the victim decided to have sex with him to see if he would let her go. Afterwards, defendant drove her across the street to find Toka, and then drove back to the motel. Defendant and Toka got out of the car, and defendant said he would call her, or something to that effect. The victim was not paying attention to what defendant said, but just wanted to leave. She arrived home around 5:00 a.m. Upon her grandmother’s urging, the victim called the police to let them know that she was no longer missing.
That morning, Detective David Spera interviewed the victim and Adams. After-wards, Detective Spera went to the Siesta Motel and confirmed that defendant had rented a room at the motel for June 25 through June 27. Defendant was arrested at the motel for second degree kidnapping.

ASSIGNMENT OF ERROR NUMBER ONE

The evidence was not sufficient to support the jury’s verdict of second degree kidnapping.

_yDISCUSSION

Defendant contends the evidence was insufficient to support his conviction because the State failed to prove he forcibly seized the victim, failed to prove that she was sexually abused, and failed to prove that he led the victim to reasonably believe he was armed with a dangerous weapon. Rather, defendant contends that the evidence established that the incident was a failed attempt at reconciliation, rather than second degree kidnapping. The State responds that the evidence proved beyond a reasonable doubt that defendant was guilty of second degree kidnapping.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime, beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
Second degree kidnapping is defined in LSA-R.S. 14:44.1 as follows:
*496 A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:[1]
(1) Used as a shield or hostage;
(2) Used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony;
(3) Physically injured or sexually abused;
(4) Imprisoned or kidnapped for seventy-two or more hours, except as provided in R.S. 14:45(A)(4) or (5); or
(5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
B. For purposes of this Section, kidnapping is:
|7(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
The State contends that the evidence was sufficient to convict defendant of second degree kidnapping because it proved that defendant forcibly seized and carried the victim from one place under subsection B(l). The State also contends that the evidence was sufficient under subsection A(3) because it proved' the victim was physically injured. In State v. Fontana, 35,826 (La.App. 2 Cir. 6/12/02), 821 So.2d 571, writ denied, 02-2072 (La.6/27/03), 847 So.2d 1251, cited by the State in its brief, the court held that the evidence supported defendant’s second degree kidnapping conviction. In that case, the evidence established that the defendant, who was the estranged husband of the victim, opened the victim’s car door and forced his way into the car. After physically preventing her from .exiting the car, the defendant drove the victim to a wooded area. Witnesses called 911. Id. at 573.
Law enforcement officers located them in the wooded area and watched them for several hours. They saw the victim attempt to leave the car, but observed the defendant leaning over the victim making hand and arm movements that caused them to believe that victim was in danger. The victim told the officers that the defendant had kidnapped her, struck her, and forced her to place her lips on his penis. Photographs were taken of her bruises. At trial, the victim testified that defendant forced her to go with him, but that she consented to being with defendant after they reached the first traffic light. Id. at 574. The Fontana court held that the evidence was sufficient to prove the defendant forcibly seized and carried the victim at least to the first traffic light, and that the evidence of the victim’s bruises satisfied the element of “physically injured.” Id. at 574.
|sThe evidence in the present case establishes that defendant forcibly seized and carried the victim from one place to another. Specifically, Adams testified that the victim was unwilling to go with the defendant. He based his assessment upon the “struggle, or whatever,” to make her get into the car and the fact that she was crying. Additionally, Mrs. Jones testified that the victim told her to call the police, and that the victim sounded frightened. The victim also said that she begged defendant to let her go, but that he would *497 not. He held her neck into the seat so that she could not see where she was going.
The defendant makes much of the fact that the victim did not attempt to escape while in the housing project or later at the motel. The victim explained, however, that she was afraid that if she ran, defendant and Toka would catch her. Defendant also argues the fact that the victim agreed to have sex with him indicates that he did not force her to go, or more importantly, to stay with him at the motel. However, the victim testified that she had sex with defendant as a means to encourage him to free her.
Additionally, the victim’s testimony is sufficient to establish the “physically injured” element of second degree kidnapping under LSA-R.S. 14:44.1(A)(3). At trial, the victim testified that defendant hit her in the face. She said that the blow caused her nose to bleed and her lip to swell. The testimony of the victim alone is sufficient to prove the elements of the offense. State v. Isaac, 97-497 (La.App. 5 Cir. 10/28/97), 702 So.2d 320, 322, fn. 2.
Defendant also contends that the State failed to prove that he reasonably led the victim to believe that he was armed with a dangerous weapon under subsection A(5), considering that the victim testified that defendant led her to believe Toka had a gun. Considering that the evidence establishes the victim was physically injured under subsection A(3), it does not appear necessary to address this argument.
| sit is the role of the fact-finder to weigh the credibility of the witnesses, and a reviewing court will not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard- of review. State v. Wallace, 00-1745 (La.App. 5 Cir. 5/16/01), 788 So.2d 578, 584, writ denied, 01-1849 (La.5/24/02), 816 So.2d 297. In returning the guilty verdict, the jury obviously rejected the defendant’s theory that the incident was a failed attempt at reconciliation, rather than a kidnapping. The jury’s careful consideration of the verdict is evidenced by the fact that the jury requested a second reading of the definitions simple kidnapping and second degree kidnapping before returning a verdict of guilty of second degree kidnapping. Viewed in the light most favorable to the prosecution, we find that the evidence establishes beyond a reasonable doubt that defendant was guilty of second degree kidnapping.
This assignment of error is without merit.

ERROR PATENT DISCUSSION

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The following matters were discovered:
It is noted that defendant did not specifically waive the twenty-four-hour delay period following the denial of his motion for new trial. In any event, because the trial judge subsequently set aside the original sentence at the multiple offender proceeding, any error was harmless. See, State v. Parker, 01-0958 (La.App. 5 Cir. 2/13/02), 812 So.2d 86, 91, writ denied, 02-1058 (La.2/21/03), 837 So.2d 624.
It is further noted that the record does not reflect the trial judge advised defendant of the prescriptive period for filing post-conviction relief. In the past, this Court has remanded the matter and instructed the trial court to send appropriate written notice to defendant of the prescriptive period for post-conviction relief, and to file written proof in the record that defendant received the |innotice within ten *498 days of the rendering of the opinion. See, State v. Shepard, 03-268 (La.App. 5 Cir. 6/19/03), 850 So.2d 819, 824, writ denied, 03-2168 (La.5/14/04), 872 So.2d 509.

CONCLUSION

Accordingly, for the reasons assigned herein, the conviction and sentence of defendant, Shannon G. Brown, are affirmed. The case is remanded to the trial court with instructions to correctly inform defendant of the prescriptive period for post-conviction relief as previously stated herein.

AFFIRMED AND CASE REMANDED WITH INSTRUCTIONS.

. The trial judge charged the jury with subsections A(3) and A(5) and all of the subsections of paragraph B.