WALTER J. ROTHSCHILD, Judge.
|20n July 29, 2008, defendant, Samuel Gordon, Jr., was charged by bill of indictment with one count of aggravated rape, in violation of LSA-R.S. 14:42. He was also charged by bill of information with one count of second degree kidnapping, in violation of LSA-R.S. 14:44.1. Defendant pled not guilty to both charges.
On March 17, 2009, trial began before a 12-person jury and ended the following day with a verdict of guilty as charged on both charges. On June 15, 2009, the trial court sentenced defendant to life imprisonment for the aggravated rape conviction and ten years for the second degree kidnapping conviction, to run concurrently. The trial court granted defendant an out-of-time appeal.
1 ¿FACTS
On May 7, 2008, J.K.,[1] who was 14 years old at the time, lived with her grandmother and her mother at 228 South Sycamore Street in Gramercy, Louisiana. At approximately 6:00 p.m., J.K. was riding her bike on Oak Street on her way to play basketball with some friends. J.K. testified that while en route, she was stopped by defendant, who asked her to use her bike. Although she did not know defendant; she allowed him to use her bike, because he was elderly. J.K. walked down the street to her friends, and when she walked back to get her bike, it was parked on the side of defendant’s house. According to J.K., as she attempted to mount her bike, defendant grabbed her, with his hands over her mouth, and dragged her inside. Once inside, defendant brought J.K. to a bedroom, threw her on the bed, and pulled her clothes down. Defendant then pulled out his penis, which had a condom on it, opened J.K’s legs, and inserted his penis into her vagina. J.K. could not scream because defendant’s hand was over her mouth; however, she fought back and eventually got out of the house.
J.K. testified that the ordeal lasted for approximately five to ten minutes. Defendant instructed J.K.: “don’t tell nobody [sic], keep this our little secret.” J.K. picked up her bike, immediately went home, and told her grandmother what had happened.
On cross-examination, J.K. explained that she ran out of the house with her pants down, and she pulled them up once she reached her friend’s yard. J.K. also declared that she never parked her bike on the side of defendant’s home to use his phone. On redirect, J.K. stated that she had no doubt in her mind that defendant was the man who pulled her into the house and raped her.
|4R.J., who is J.K.’s grandmother, testified that J.K. returned home around 6:15 p.m., with her hair disheveled, screaming and crying, exclaiming that a man on Oak Street “had put his thing in her.” J.K. was holding her mouth, so R.J. asked if he put it in her mouth and J.K. responded negatively and said he “put it inside of her.” At that point, R.J. knew that her granddaughter had been raped so she immediately called 9-1-1 and reported the incident to the police.
L.K., who is J.K’s mother, testified that she left the residence as J.K. was leaving. When she later arrived home, J.K. was hysterical. R.J. and J.K. told her what had happened. L.K. stated that J.K. was *32 a good child and she was not sexually active before the incident.
Sergeant Joseph Hamilton testified that on May 7, 2008, he was dispatched to a residence on Sycamore Street in Gramer-cy, where he observed J.K., who was distraught and crying. Sergeant Hamilton was attempting to speak with J.K’s grandmother when he received a dispatch to South Oak Street relative to a home invasion at defendant’s home. Eloise Riley, who later testified for the defense, stated that she observed J.K.’s father and a group of men beating on defendant’s door and walking around his house. Detective Claude Louis, Jr. of the St. James Parish Sheriffs Office also responded to the call. Upon arriving at defendant’s residence, both officers observed that the front door was kicked open. After searching the residence twice, defendant was discovered hiding in a closet underneath a pile of clothes. Defendant gave the officers the name Sammy Gordon with an incorrect date of birth, but the discrepancy was resolved. Defendant was transported to St. James Hospital, where he was unable to respond to any questions.
Detective Louis photographed defendant’s residence and also recovered a condom wrapper from a bedroom floor. After processing the scene, Detective | ¿Louis developed a photographic lineup, which was shown to J.K. J.K. immediately identified defendant as the person who had forced her inside and raped her at 266 South Oak Street.
After meeting with the police, L.K. took J.K. to St. James Hospital. Dr. Taylor Sanders treated J.K., who appeared to be calm, in the emergency room. A vaginal examination was performed and evidence was collected for the rape kit. Doctor Sanders discovered fluid in J.K.’s vaginal cavity, but he could not determine if it was semen. Dr. Sanders also testified that J.K. complained of light bleeding after the incident. Dr. Sanders’ medical report reflected that J.K. was 5'6", 226 pounds, and in good physical condition. Dr. Sanders did not observe any trauma or bruises on the victim, but he stated that lack of signs of trauma does not rule out consensual or forced penetration.
Sergeant Mary Kliebert, a juvenile officer with the St. James Parish Sheriffs Department, testified that after receiving a dispatch regarding a sexual assault, she proceeded to St. James Hospital where she interviewed J.K. In her audio-taped statement to Sergeant Kliebert, J.K.’s account of the events was substantially similar to her testimony at trial. However, Sergeant Kliebert indicated that J.K. did not state that she allowed the suspect to use her bicycle; rather, J.K. indicated that he pulled her off of it when she told him he could not use it. J.K. related that she did not know the suspect, but she described him as being older and bald with some gray facial hair.
On May 9, 2008, a search warrant to obtain defendant’s DNA and a warrant for defendant’s arrest were obtained. Defendant was arrested, and after-being advised of and waiving his Miranda[2] rights, he gave a statement to the police. Sergeant Kliebert testified that when defendant changed his story three times, the | (¡interview was terminated. Defendant first stated that J.K. had knocked on his door. Then, he said he was watering his plants when she asked to use the phone, and his story continued to change so the interview was concluded.
On cross-examination, Sergeant Kliebert admitted that neither J.K.’s clothes nor defendant’s clothes were ever tested for *33 forensic evidence. Sergeant Kliebert also confirmed that her report stated that the doctor indicated that seminal fluid was found in J.K.’s vagina. Sergeant Kliebert stated that subsequent testing revealed that the fluid did not match defendant’s DNA. Sergeant Kliebert later explained that the crime lab results indicated that there was no seminal fluid at all found in the rape kit, and that the doctor may have given her the wrong information.
Detective Louis also participated in defendant’s interview. Detective Louis recalled that defendant was asked whether his DNA would match from the sample taken from the victim’s rape kit, and he responded: “I don’t think so.”
Lieutenant Patricia Boudoin of the St. Charles Sheriffs Office testified that after receiving a phone call from Sergeant Klie-bert, she interviewed J.K. at the Children’s Advocacy Center on May 15, 2008. The videotaped interview was played for the jury. J.K.’s taped statement was substantially similar to her testimony during trial. Notably, however, the victim stated that she lent her bike to defendant, which was different from her earlier statement to police.
The defense called Morris Lodrigue, who was defendant’s neighbor, to the stand. Lodrigue testified that at around 6:00 p.m. on the day of the incident, he was outside when he saw J.K. riding up and down the street. Lodrigue never observed defendant ask to borrow J.K’s bike or pull her inside of his house. He did observe J.K. exit defendant’s home, walk on the side of the house to her bike, and ride off; however, she was not screaming and was fully dressed.
|7On cross-examination, Lodrigue admitted that he had never seen the girl at defendant’s house before so he asked defendant why she was inside and he responded that she wanted to use the phone. This made Lodrigue suspicious because she could have used the phone outside.
Ryan Miller, who was 43 years old at the time of trial, testified that she was sexually involved with defendant at the time of the incident. Miller stated that she and defendant were sexually intimate on the night before the incident and defendant used a condom. Miller also testified that defendant was disabled. He had type II diabetes and knee surgeries, which caused him to have difficulty walking, as well as a heart condition, hypertension, and high blood pressure.

LAW AND DISCUSSION

In his sole assignment of error on appeal, defendant claims that the evidence was insufficient to uphold his convictions for aggravated rape and second degree kidnapping. He asserts that it was “a near physical impossibility” for the elderly and sickly defendant to have committed the charged crimes against J.K. who was in good physical shape, weighing 226 pounds and being 5 foot 6 inches in height. In addition, he argues that the physical evidence tested had no detectable DNA and other evidence that was collected was not tested.
The constitutional standard for testing the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. A reviewing court is required to consider the whole record and I «determine whether a *34 rational trier of fact would have found guilt beyond a reasonable doubt. State v. Bolden, 03-0266 (La.App. 5 Cir. 7/29/03), 852 So.2d 1050,1056.
Defendant was convicted of aggravated rape. Aggravated rape is defined in LSA-R.S. 14:42 in pertinent part:
A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person’s lawful consent. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime. LSA-R.S. 14:41.
Defendant was also convicted of second degree kidnapping. LSA-R.S. 14:44.1 states in relevant part:
A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
(3) Physically injured or sexually abused;
B. For purposes of this Section, kidnapping is:
(1) The forcible seizing and carrying of any. person from one place to another.
Credibility determinations are within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938, 943 (La.1984). A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. | ^State v. Rogers, 494 So.2d 1251, 1254 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987). Accordingly, the reviewing court’s role is not to assess credibility or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442, 443. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’ testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Robinson, 02-1869, p. 16 (La.4/14/04), 874 So.2d 66, 79, cert, denied, 543 U.S. 1023, 125 S.Ct. 658, 160 L.Ed.2d 499 (2004).
J.K. testified that as she attempted to mount her bike, defendant grabbed her and dragged her into his home, where he inserted his penis into her vagina. During the encounter, J.K. was fighting defendant, who had his hand over her mouth, and finally escaped. J.K. testified that there was no doubt in her mind that defendant was the person who forced her off of her bike and raped her in his home.
We note that there are some inconsistencies between J.K.’s original statement to the police and the statement she gave to Lieutenant Boudoin. In particular, Sergeant Kliebert testified that in her original statement, J.K. stated that she did not lend defendant her bike; however, in her subsequent statement, she stated that she allowed defendant to borrow her bike. However, at trial, J.K. explained that she had allowed defendant to use her bike and in the first statement she was referencing the events that took place after she gave defendant the bike and she was re-claiming it.
J.K.’s testimony also contradicts the testimony of Morris Lodrigue, who indicated that he saw J.K. riding her bike, but never observed defendant ask to borrow it. Lo-drigue also testified that he saw J.K. exit *35 ing defendant’s home; however, she was fully clothed and did not appear to be in distress. The jury was presented with these discrepancies and apparently chose to believe J.K.
1 ^Defendant also attacks J.K’s credibility suggesting that defendant was too old and ill to have committed the crimes.[3] Ryan Miller testified that defendant was disabled, and he had type II diabetes, knee surgeries, which caused him to have difficulty walking, hypertension, and high blood pressure. However, Miller also testified that defendant was sexually active and could walk, albeit with difficulty. Despite Miller’s testimony, there is nothing in the record which reflects that defendant irrefutably could not have committed the crimes. The jury apparently did not believe defendant’s claim that his physical limitations would have made it impossible for him to commit the crimes alleged.
The jury heard all of the evidence and apparently found the victim, J.K., to be credible and determined that defendant forcibly took J.K. into his home thereby kidnapping her, and raped her despite her continuous struggle to break free and flee. A review of the record as a whole shows the jury’s determination was reasonable.
Defendant also relies on a lack of scientific evidence to support his claim that the evidence was insufficient to prove he committed aggravated rape. However, in the case of sexual offenses, the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense. State v. Hotoph, 99-243, p. 13 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045, writs denied, 99-3477 (La.6/30/00), 765 So.2d 1062, and 00-0150 (La.6/30/00), 765 So.2d 1066. See also State v. Tapps, 02-0547 (La.App. 5 Cir. 10/29/02), 832 So.2d 995, 1001, writ denied, 02-2921 (La.4/21/03), 841 So.2d 11789, where this Court held that the victim’s testimony alone, even absent any additional physical evidence, was sufficient to establish the elements of the offense of forcible rape.
The testimony of the victim and other witnesses was sufficient to establish all of the elements of the crimes of aggravated rape and second degree kidnapping. We note that the victim provided a reasonable explanation for her seemingly inconsistent statements and the jury made credibility determinations when considering conflicting testimony of the witnesses. Considering all of the testimony and evidence, we find that the record contains sufficient evidence to uphold defendant’s convictions for aggravated rape and second degree kidnapping.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). Our review did not reveal any errors that require corrective action.

DECREE

For the foregoing reasons, we affirm defendant’s conviction and sentence.

AFFIRMED

. The victim's initials, and those of certain family members, are used under the authority of LSA-R.S. 46:1844(W)(3), which allows the court to protect the identity of a crime victim who is a minor or a victim of a sex offense by using his or her initials. See State v. Greene, 06-667, p. 3 (La.App. 5 Cir. 1/30/07), 951 So.2d 1226, 1229, writ denied, 07-0546 (La. 10/26/07), 966 So.2d 571.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).

. Defendant also claims that the fact that the victim's father kicked in his door is inexplicable when J.K. stated that she did not know who had raped her. However, J.K. explained in both of her statements that the incident occurred on Oak Street in a house that was pink and tan or cream. R.J. also confirmed in her statement that J.K. had indicated that the house was pink and white. Given a street and description of the house, it is reasonable that J.K.'s father could have located defendant's home.