ROBERT M. MURPHY, Judge.
|2Pefendant, Winona Humphery, appeals her conviction for second degree kidnapping of a known juvenile (DOB: 5/14/99) in violation of La. R.S. 14:44.1. In her sole assignment of error, defendant argues that there was insufficient evidence to support the “physical injury” element of the charge of second degree kidnapping. For the following reasons, we find defendant’s assignment of error to be without merit and affirm defendant’s conviction and sentence. However, we remand this matter to the trial court for correction of the uniform commitment order.
STATEMENT OF THE CASE
On December 13, 2012, the Jefferson Parish District Attorney filed a bill of information charging defendant with second degree kidnapping of a known juvenile (DOB: 5/14/1999) in violation of La. R.S. 14:44.1. Defendant was 1 ¡¡arraigned on December 21, 2012, and she pled not guilty. On June 10, 2013, defendant filed omnibus and pre-trial motions including motions to suppress statements, evidence, and identifications.
On February 18, 2014, defendant filed a written motion to quash, which the trial court denied after a motion hearing held on that same date. At that same motion hearing, the trial court heard defendant’s motion to suppress statement, which was denied. After waiving the jury, defendant immediately proceeded to a two-day judge trial. On the second day of trial, defendant made an oral motion for a judgment of acquittal, which the court denied. Defendant was found guilty as charged on that same date.
On April 21, 2014, defendant filed and the trial court denied defendant’s motion for new trial, wherein defendant urged in pertinent part that the victim received no injuries. After waiving sentencing delays, defendant was immediately sentenced to five years imprisonment at hard labor with three years of the sentence suspended. The trial court ordered the first two years of the sentence be served without benefit of probation, parole, or suspension of sentence. The court further ordered that defendant be placed on active probation for three years upon her release. In addition to all general conditions of probation, the court ordered that defendant pay court costs and fines. Defendant filed a written motion for appeal on that same date, which was withdrawn by defense counsel. On April 28, 2014, defendant filed, and the trial court granted, a subsequent motion for appeal. This timely appeal follows.
LFACTS
In 1998, R.H.[1] and C.H. met and lived together unmarried in New Orleans, Louisiana. In 1999, they had a child, J.H.; R.H. signed the birth certificate[2] as J.H.’s father. In 2000, R.H. first met defendant, Winona Humphery, C.H.’s mother. That same year, C.H. married someone else. In 2001, R.H. was convicted of forcible rape while he was still in a relationship with C.H. He served two years in prison. J.H. was living with his mother, C.H., in Dayton, Ohio, when R.H. was released.
*940 R.H. testified that he maintained a good relationship with J.H. in 2005 through 2006. He spoke with J.H. and sent him clothes. In 2006, J.H. spent the summer with R.H., during which time he learned that R.H. was his father. R.H. began dating his girlfriend, M.T., at the end of 2007. In 2008, C.H. died. J.H. and R.H. attended C.H.’s funeral in Michigan. After the funeral, J.H. went to live with R.H. in Louisiana.
In 2012, defendant’s former husband, T.H., called R.H. to warn him that defendant was trying to “round up all the kids together.” R.H. had declined to allow J.H. to travel to a Virginia reunion because he could not attend.
J.H. testified that defendant and he had no contact between the funeral in 2008 and the incident in October of 2012. M.T., R.H.’s girlfriend, testified that R.H. did not want J.H. to have any contact with defendant, who was a “dangerous person,” though J.H. did speak daily with his sister, A.H., in Michigan.
R.H. testified that he had a good relationship with defendant’s family, that he visited defendant’s sister in Harvey, Louisiana, that he had stayed with ^defendant’s relatives while at C.H.’s Michigan funeral, and that they had no problems with his being previously incarcerated.' J.H. testified that R.H. did not want him to contact defendant because he thought she would take him as she did J.H.’s sister.
On or about Saturday, October 20, 2012, J.H. was spending the night at the house of a friend, R.D., who lived nearby and was celebrating his birthday the next day. A.H. called to inform J.H. that she and defendant were coming to take pictures of him with his cousins, since they had not seen him in so long. Defendant and A.H. arrived the next day. J.H. greeted them outside without shoes on. Defendant told him to get in the car as they were going to the store. J.H. testified that he wanted to delay going anywhere until R.H. got home from work. J.H. went into his friend’s house to use the restroom, and defendant called for him to leave. J.H. said that defendant told him to get into the vehicle, so he could go home to get his shoes. J.H. said they could walk around the corner to his house. Defendant insisted on driving.
J.H. said he entered vehicle in order to retrieve his shoes from his home; however, the car then drove past the store and his home. J.H. and defendant were in the back seat, with A.H. and an unidentified female driver in front. J.H. said they never went to his house or the store or even stopped to take pictures. J.H. said he did not want to leave his father or go to Michigan.
J.H. opened the car door and attempted to jump from the moving vehicle three times. J.H. described how defendant grabbed him by his collar, choked him, and made it difficult for him to breathe. He testified that it hurt to be hit and choked. He further described how he kicked at the window, and his sister, A.H., sat on his legs. He said he screamed and told the driver to stop, and that defendant told her to keep driving. He said defendant told him that his step-father murdered | fihis mother and put her in a trash can. J.H. testified that defendant punched him with a closed fist in his eye, causing it to become swollen.
Thereafter, they stopped at Wal-Mart to buy him shoes and later in Mississippi to visit a cousin. J.H. called his friend, R.D., hours later crying to tell him to call his father. R.D. related to R.H. that defendant stopped by, forced J.H. into the vehicle, and left with him. R.H. called 9-1-1, and defendant was subsequently arrested in Michigan. J.H. stayed with defendant’s former husband, T.H., until his return to Louisiana the following Wednesday.
*941 There were no pictures taken of J.H.’s eye. Defendant’s mother testified that she did not see any visible bruises or scratches on J.H. The blow was not noted on the police report or noticed by R.H. when he saw J.H. four to five days later. J.H. also was not taken to the hospital or examined by a doctor. Defendant testified that she did not strike J.H. but prevented him from jumping from the car. She further contends that she offered to turn around and that she did stop the vehicle the second time J.H. attempted to jump out. She testified that J.H.’s actions were a result of his not knowing all of the details.
Defendant argued that she gained custody of J.H., set up a bank account for him, got him a phone, and had a bedroom ready for him in Michigan. She contended that the grandchildren were not mentally adjusting,-and that it would help the children if they were placed back in the mother’s family that they knew. Defendant testified that she always knew that R.H. was J.H.’s father because her daughter informed her that R.H. raped her. In September of 2012, defendant petitioned the Michigan Probate Court for temporary legal guardianship of J.H. She alleged therein that J.H.’s paternity was not established. The temporary guardianship was granted on October 3, 2012. Chief Chester Kowalski, police chief of Fairhaven Township in Michigan, testified that R.H. contacted him to |7report the kidnapping and relate that defendant was gathering her grandchildren to obtain Social Security money. After confirming that R.H. was on the birth certificate, Chief Kowalski issued an arrest warrant for defendant. The guardianship order was rescinded.
Defendant argued that this was the first time she saw J.H.’s birth certificate with R.H. listed as the father. Defendant testified that R.H. wanted her to take J.H. To the contrary, R.H. testified that he never would have given custody of J.H. to someone else and that it was never discussed. He also testified that he received J.H.’s Social Security benefits consistently from 2008 until prior to the incident. Defendant denied applying for such benefits in Michigan.
LAW AND DISCUSSION
In her sole assignment of error, defendant argues that the evidence was insufficient to support the physical injury element of the charge. Defendant was convicted of second degree kidnapping in violation of La. R.S. 14:44.1, which provides in pertinent part that: -
A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
(1) Used as a shield or hostage;
(2) Used to facilitate the commission of a felony or the- flight after an attempt to commit or the commission of a felony;
(3) Physically injured or sexually abused;
(4) Imprisoned or kidnapped for seventy-two or more hours, except as provided in R.S. 14:45(A)(4) or (5); or
(5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
B. For purposes of this Section, kidnapping is:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person. (Emphasis added).
*942 |sThe provisions of this statute apply when any one occurrence mentioned in Subsection (B) combines with any occurrence enumerated in Subsection (A). State v. White, 593 So.2d 882, 887 (La.App. 2 Cir.1992).
Defendant argues that the evidence was insufficient to prove the critical element of physical injury. Defendant requests that her sentence be vacated, her conviction set aside, and a verdict for simple kidnapping be entered. Specifically, defendant asserts that La. R.S. 14:44.1 requires more than a mere battery, unwanted touching, discoloration, swelling, or pain, and instead, demands proof beyond a reasonable doubt of physical injury. Defendant contends that a change in color of the skin or swelling is only a temporary change in appearance and not a physical injury. Defendant argues that although the victim, J.H., testified that his eye was swollen and hurt, when he was later asked whether the choking and pulling hurt, he responded, “not really.” Defendant stated that there were no medical records, photographs, witnesses, or any evidence to prove she caused physical injury to J.H.
Based on the trial court’s credibility assessment, the State responds that the victim’s testimony was sufficient to establish the “physically injured” element of second degree kidnapping under La. R.S. 14:44.1(A)(3). The State asserts that the trial court found the victim’s testimony to be credible that he was injured during the taking. The State further argues that a rational trier of fact could conclude that the “blow to the eye” sustained by the victim was sufficient to result in physical injury as contemplated by the statute. The State asserts that defendant’s conviction and sentence should be affirmed.[3]
|9The constitutional standard for testing the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. State v. Gordon, 11-373 (La.App. 5 Cir. 4/24/12), 94 So.3d 29, 33-34, writ denied, 12-1189, pp. 7-8 (La.10/8/12), 98 So.3d 851 (citing Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a reviewing court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, a reviewing court is required to consider the whole record and determine whether a rational trier of fact would have found guilt beyond a reasonable doubt. Gordon, 11-373 at 7-8, 94 So.3d at 33-34 (citing State v. Bolden, 03-0266 (La.App. 5 Cir. 7/29/03), 852 So.2d 1050, 1056).
Credibility determinations are within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence. Gordon, 11-373 at 8, 94 So.3d at 34 (citing State v. Vessell, 450 So.2d 938, 943 (La.1984)). Accordingly, the reviewing court’s role is not to assess credibility or reweigh evidence. Gordon, 11-373 at 9, 94 So.3d at 34 (citing State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442, 443). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’ testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. Gordon, 11-373 at 8, 94 So.3d at 34 (citing State v. Robinson, 02-1869, p. 16 (La.4/14/04), 874 So.2d 66, 79, cert. denied, *943 543 U.S. 1028, 125 S.Ct. 658, 160 L.Ed.2d 499 (2004)).
Further, the victim’s testimony alone is sufficient to establish the “physically injured” element of second degree kidnapping under La. R.S. 14:44.1(A)(3). State v. Brown, 04-1113, p. 8 (La.App. 5 Cir. 3/29/05), 901 So.2d 492, 497. In Brown, the victim testified that the defendant hit her in the face, which caused her nose to bleed and her lip to swell. This Court found that the testimony of the victim alone was sufficient to prove the elements of the offense. Brown, supra.
In the present case, J.H. and R.D. both testified that defendant convinced J.H. to enter her vehicle and drove away with him. J.H. testified that defendant led him to believe that they were driving to his house or to the store. He explained that when they passed both of these places, he realized that defendant was attempting to “take” him. J.H. also testified that if he knew that defendant would take him to Michigan, he would have never entered her vehicle. J.H. further testified that he made three attempts to jump out of the vehicle, and defendant forcibly held him inside the vehicle. J.H. also testified that defendant choked him and hit him in the eye with a closed fist. He explained that when defendant choked him, it was difficult to breathe. J.H. also testified that his eye was swollen.
It is noted that defendant testified on her own behalf that she did not choke or punch J.H. Further, defendant’s mother testified that there were no visible signs that J.H. was injured. Nevertheless, it appears that after hearing all of the evidence, the trial judge found the testimony of J.H., R.D., and other State’s witnesses more credible than the testimony of the witnesses presented by the defense. Further, the trial court stated that it found J.H.’s testimony credible that he was injured during “the taking.”
Based on all of the testimony and evidence, we find that the record contains sufficient evidence to support the “physically injured” element of second degree kidnapping.
• Considering the foregoing, we find that defendant’s sole assignment of error lacks merit.

J¿¡ERRORS PATENT DISCUSSION

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
The record reveals a conflict between the transcript and the “State of Louisiana Uniform Commitment Order,” which reflects the incorrect date range for the offense. The uniform commitment order incorrectly reflects’ the offense date range as between October 19 and 21, 2012. However, the record reflects that the offense was committed between October 20 and 21, 2012.
This Court has previously remanded a case for correction of the uniform commitment order in its errors patent review when it is inconsistent with the transcript. See State v. Lyons, 13-564, p. 9 (La.App. 5 Cir. 1/31/14), 134 So.3d 36 (citing State v. Long, 12-184, pp. 10-11 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142). Therefore, we remand this matter for correction of the uniform commitment order regarding the offense date range and further direct the Clerk of Court to transmit the original of the corrected uniform commitment order to the officer in charge of the institution to which defendant has been sentenced and the Department of Corrections’ legal department. Lyons, supra (citing State ex rel. Roland v. State, 06-244 (La.9/15/06), 937 So.2d 846 (per curiam)); see also La.C.Cr.P. art. 892(B)(2).

*944
\ ^DECREE

In light of the foregoing reasons, defendant’s conviction and sentence are affirmed; the matter is remanded with instructions to correct the uniform commitment order.

CONVICTION AND SENTENCE AFFIRMED; REMANDED FOR CORRECTION OF THE COMMITMENT.

. To protect the privacy of the victim, initials will be used to identify the victim, the child witnesses, and the victim's family, pursuant to La. R.S. 46:1844(W)(3). See State v. Greenup, 12-881, p. 3 (La.App. 5 Cir. 8/27/13), 123 So.2d 768, 770, writ denied, 13-2300 (La.3/21/14), 135 So.3d 617 (citing State v. Greene, 06-667, p. 3 (La.App. 5 Cir. 1/30/07), 951 So.2d 1226, 1229, writ denied, 07-546 (La.10/26/07), 966 So.2d 571).

. J.H.’s birth certificate was admitted at trial.

. The State notes in its brief and the record reflects that defendant did not file a post-verdict judgment of acquittal. However, this failure does not preclude appellate review of the sufficiency of the evidence. State v. Washington, 421 So.2d 887, 889 (La.1982); State v. Carey, 04-1073 (La.App. 5 Cir. 3/29/05), 901 So.2d 509, 512 n. 4.