STATE OF LOUISIANA

VERSUS

MALCOLM J REED

NO. 24-KA-59

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 21-5868, DIVISION "M"
HONORABLE SHAYNA BEEVERS MORVANT, JUDGE PRESIDING

December 30, 2024

**TIMOTHY S. MARCEL**
**JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Timothy S. Marcel

**CONVICTION AND SENTENCE AFFIRMED**
    **TSM**
    **SMC**
    **FHW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Waquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
 Honorable Paul D. Connick, Jr.
 Thomas J. Butler
 Juliet L. Clark

COUNSEL FOR DEFENDANT/APPELLANT,
MALCOM REED
 Graham L. Bosworth
 Autumn A. Town

**MARCEL, J.**

Defendant, Malcolm J. Reed, appeals his conviction and sentence for second-degree kidnapping. In the instant appeal, defendant designates six assignments of error. For the reasons that follow, we affirm the conviction and sentence.

## PROCEDURAL HISTORY

On October 28, 2021, the Jefferson Parish District Attorney filed a bill of information charging defendant with second-degree kidnapping in violation of La. R.S. 14:44.1, armed robbery with a firearm in violation of La. R.S. 14:64, (invoking the sentencing provision under La. R.S. 14:64.3(A)) and aggravated battery with a "gun and/or baseball bat" in violation of La. R.S. 14:34.[1] Defendant pled not guilty to all counts on October 28, 2021. Named in the bill of information as a co-defendant is defendant's wife, Mishanda Reed.

The case proceeded to jury trial on September 26, 2023. Before trial began, the State amended the bill of information to reflect that count two, armed robbery with a firearm, was *nolle prossed.* On September 28, 2023, the jury unanimously found defendant guilty as charged on count one, second-degree kidnapping, and guilty of the lesser offense of simple battery on count three. Defendant's post-trial motions for new trial and for post-verdict judgment of acquittal were denied by the trial court.

As to count one, second-degree kidnapping, the trial court sentenced defendant to thirteen years imprisonment at hard labor, with the first two years to be served without the benefit of parole, probation, or suspension of sentence. For the crime of simple battery, the jury's responsive verdict on count three, defendant

---

[1] This filed Bill of Information superseded the Bill of Information filed by the Jefferson Parish District Attorney on October 26, 2021, which charged defendant with two counts of aggravated battery with a knife in violation of La. R.S. 14:34, and armed robbery with a firearm in violation of La. R.S. 14:64, with the sentencing provision contained in La. R.S. 14:64.3(A).

was sentenced to six months in Jefferson Parish Correctional Center, to be served concurrently with count one.

On October 16, 2023, defendant filed a motion to reconsider sentence, a notice of appeal, and a motion for bail on appeal. The trial court denied the defendant's motion to reconsider sentence, granted the notice of appeal, and denied the motion for bail on appeal on October 20, 2023. This timely appeal follows.

**FACTS**

At trial, Avery Cooper testified that he and Mishanda Reed, defendant's wife, were classmates at Xavier University. They had known each other since 1997, and dated for a few years. After that relationship ended, they remained in touch until Mishanda Reed married defendant and moved to Los Angeles, California. Mr. Cooper moved to Houston, Texas around the same time.

After five years without contact, Mrs. Reed contacted Mr. Cooper in 2018 about an upcoming college reunion. While Mr. Cooper was unable to attend their college reunion, he did meet Mrs. Reed in Los Angeles during a flight layover. They remained in contact afterwards. In 2020, they met in New Orleans for drinks and dinner, and planned another meeting in New Orleans in June 2021.

On June 27, 2021, Mr. Cooper drove from Houston to meet Mrs. Reed in New Orleans. During his drive, he received a text message from Mrs. Reed which identified a hotel at 1200 Canal Street as their meeting location. He called Mrs. Reed when he arrived at the hotel. In that call, Mrs. Reed informed him that she changed the meeting place to an Airbnb in Kenner, Louisiana, and asked Mr. Cooper to pick her up at that location.

Mr. Cooper recalled that Mrs. Reed met him outside the Airbnb wearing a yellow dress when he arrived. She then went to retrieve her purse from inside the Airbnb; Mr. Cooper followed her to use the restroom. Once inside, Mrs. Reed

informed Mr. Cooper that there were treats on the second floor. Mr. Cooper believed the treats would be THC gummies. He went up the stairs, noticed her purse, and called out to Mrs. Reed. At that moment, he recalled seeing a man, later identified as defendant, enter through the front door with a gun and an aluminum baseball bat. Mr. Cooper described the man appearing angry and upset, and believed he was there to rob them. He yelled from the top of the stairs for Mrs. Reed to call the police. She did not respond.

Standing on the bottom step, defendant looked up, made eye contact with Mr. Cooper, and said "Get your f**king a** down here." He recalled repeatedly screaming for Mrs. Reed but did not see her. As Mr. Cooper reached for his phone, defendant pointed his gun at Mr. Cooper, and threatened, "If you pull out that f**king phone, I'm going to shoot your a**." Mr. Cooper recounted that he crossed over the stair railing, which he held onto outside of the staircase. Mr. Cooper testified that defendant then gestured towards him, and said, "Pull your a** back over, pull your a** back over." He complied, crossing back over the rail into the staircase, scraping his shin in the process. Once he was back inside the staircase, defendant instructed Mr. Cooper to "Get on your f**king knees."

Believing they were being robbed and that defendant had the wrong place, Mr. Cooper told defendant that they were not the people he was looking for. Defendant, who had moved up the stairs to Mr. Cooper, replied, "Oh, I got the right f**king person." Mr. Cooper testified that he then lunged at defendant. Defendant reacted by hitting Mr. Cooper's leg with the bat. Mr. Cooper fell to the ground and they proceeded to wrestle over the gun in defendant's possession. This ended, according to Mr. Cooper, when, defendant pointed the gun at him. Now at gunpoint, Mr. Cooper told defendant that Mrs. Reed was getting help and the police would arrive soon. Defendant responded by yelling downstairs, "Get your a** up here."

24-KA-59                                    3

Mrs. Reed soon appeared upstairs. Mr. Cooper recalled looking at her in confusion and defendant saying to him, "That's right. You figured it out." Mr. Cooper asked her if she had set him up. Defendant told Mr. Cooper, "Don't f**king talk to her" and hit him again with the bat. Defendant then instructed Mrs. Reed to go downstairs and retrieve his bag. After she returned with the bag, defendant, who was still holding the gun and bat, told her to get out the zip ties.

Mrs. Reed used the zip ties to bind Mr. Cooper's wrists. Once his hands were secured in zip ties, Mr. Cooper testified that defendant placed the bat on the bed and put the gun away. Mrs. Reed then secured Mr. Cooper's legs with zip ties, as defendant instructed. Defendant then instructed her to search Mr. Cooper's pockets. Mrs. Reed removed Mr. Cooper's mobile phone, keys and wallet from his pants pockets. She handed the phone to defendant. In his testimony, Mr. Cooper recalled realizing at this point that defendant was Mrs. Reed's husband. He told defendant that Mrs. Reed said she was divorced, to which defendant responded by picking up the bat and said, "Don't f**king say that."

Using the password Mr. Cooper provided, defendant unlocked and began scrolling through the phone. Mr. Cooper testified that defendant said, "Okay, we're getting ready to play this game. If you lie to me—every time you lie to me, I'm going to hit you with this aluminum bat." Defendant went on to tell Mr. Cooper, "If there's anything in here about f**king, you're a dead man." Mrs. Reed informed defendant there was nothing about a sexual relationship on Mr. Cooper's phone, to which defendant replied, "I don't know because you erased all of your text messages before I could go through your phone, so I have to go through his."

Mr. Cooper described the game as defendant posing questions to him while holding a gun to his head. His hands and legs were bound in zip ties. When defendant was not satisfied with answers to questions, he struck Mr. Cooper in the face and on the head with the gun. One blow chipped Mr. Cooper's tooth. As the

game progressed, Mrs. Reed asked defendant if he was satisfied and whether they reached a "level-2", to which defendant repeated, "We're getting there." Mr. Cooper understood "level-2" as referring to a less intense or a more calming stage. At various points of the game, defendant asked Mrs. Reed to report the time.

While he was upstairs with defendant, Mr. Cooper recalled asking Mrs. Reed why she had set him up. He urged her to tell defendant that she reported her marital status to him as divorced. Defendant reacted to this by hitting Mr. Cooper and instructing him not speak to Mrs. Reed.

Mr. Cooper testified that throughout this time, which he described as several hours, Mrs. Reed went up and down the stairs multiple times. At some point after receiving a time report from Mrs. Reed, defendant instructed Mrs. Reed to retrieve Clorox and towels from downstairs. Mrs. Reed proceeded to clean up bloodstains around Mr. Cooper with Clorox and rags as defendant stood over him holding the bat and his mobile phone. Once the clean-up was completed, defendant instructed Mrs. Reed to place everything in the washing machine.

Afterwards, defendant set up a plan for leaving the Airbnb. Mrs. Reed would get defendant's car from around the corner and follow defendant in Mr. Cooper's car. Mr. Cooper recalled that Mrs. Reed walked out with keys in her hand. She returned inside shortly after and advised they needed to be careful because people were outside. Mrs. Reed then went back downstairs to retrieve defendant's car.

Mr. Cooper testified that while he and defendant were alone in the Airbnb, defendant removed a knife from his bag. He believed defendant intended to attack him with the knife, and pled with defendant to stop. Defendant replied, "No. It's going to be all right. It's going to be all right. I'm just going to make you look like the African tribes." Defendant then started cutting beneath his eye and continued to cut his face several times with the knife. Although he did not see

Mrs. Reed, Mr. Cooper knew she was still in the residence because he heard her scream, "That's enough." Defendant then stopped.

Defendant cut the restraints from Mr. Cooper's legs, and placed them in a bag, saying they needed to leave. Mr. Cooper explained to defendant that he was unable to get up due to numbness in his legs and hands. Defendant responded, "No, you're going to get your a** up" and proceeded to lift Mr. Cooper by the armpits and lead him down the stairs. Mr. Cooper recalled being escorted outside from behind by defendant; defendant kept his hands on Mr. Cooper as they proceeded to his car. Next to his car was a black sedan with Mrs. Reed in the driver's seat. Defendant informed Mr. Cooper of the plan to leave. They would be in Mr. Cooper's car with Mrs. Reed following in defendant's car.

Mr. Cooper was placed in the front passenger seat of his own car, describing himself as a "captive" in it. Defendant, after speaking with Mrs. Reed, returned to Mr. Cooper's car, placed a bag in the backseat, got into the driver's seat, started the car, and drove off. Mr. Cooper recalled thinking they would "dump [him] somewhere." After driving for a distance, defendant pulled over, turned on the hazard lights, and placed a phone call to Mrs. Reed to ask her location. She reported that she was pulling up behind them. Defendant removed Mr. Cooper from his vehicle and placed him in the back seat of defendant's car. He instructed Mrs. Reed to put her phone on speaker and instructed they were not to speak to one another. Defendant then returned to Mr. Cooper's car. While alone with Mrs. Reed, Mr. Cooper asked her for help. She shook her head no.

From the backseat of defendant's car, Mr. Cooper recalled observing defendant rummaging through his car and wiping down the steering wheel. Mr. Cooper then saw defendant get out of the car with his mobile phone, remove its SIM card, then smash the phone with a hammer. Mr. Cooper recalled defendant got into the back seat of the car with the bag next to him, closed the car door, and

instructed Mrs. Reed to drive away. Defendant told Mr. Cooper, "You better consider yourself f**king lucky that I can control my temper." When the vehicle stopped, defendant ordered Mr. Cooper out of the car and onto his knees. After initially protesting, Mr. Cooper complied, getting onto his knees. Defendant then used the knife to remove the zip ties binding Mr. Cooper's hands, cutting into his wrists in the process.

Mr. Cooper testified that after the zip ties were removed, defendant instructed Mrs. Reed to prepare to drive. Defendant then pushed Mr. Cooper over onto the road. Defendant re-entered the car and Mrs. Reed drove the two away. Mr. Cooper recalled there was little traffic on the road and he had no way to call for help. Eventually, a truck stopped and the driver called the police.

The police and an ambulance eventually arrived. Mr. Cooper described being in severe pain and disbelief. He was transported by ambulance to a hospital, where he received treatment for a concussion, a potential broken left arm, right leg swelling, and internal bleeding requiring a blood transfusion. He was admitted to the ICU for four days. Mr. Cooper testified that he requested anonymity from hospital administrators because he feared the perpetrators might return. On cross-examination at trial, Mr. Cooper testified that his right leg was scraped while crossing over the stair railing and defendant struck his left leg with a baseball bat. He also testified on cross-examination about having other health conditions, acknowledging those as possible reasons for the length of his stay in ICU. He testified that he still has a chipped tooth, a major scar on his leg, and visible scars on his wrists and cheeks from the incident.

While at the hospital, police presented Mr. Cooper with photographs. He identified Mrs. Reed and defendant in the lineups as the individuals who inflicted his wounds. He also identified defendant as the individual who hit him with the baseball bat. During his hospital stay, Mr. Cooper gave a recorded statement to

police in which he reported being beaten with a hammer. At trial, Mr. Cooper acknowledged the recorded statement but testified that defendant only used the hammer to smash his phone.

After being released from the hospital on July 1, 2021, Mr. Cooper learned that his vehicle had been recovered with the keys and wallet found inside. He also gave a second recorded statement to police. In his trial testimony, Mr. Cooper addressed inconsistencies in statements given to police and responding EMS. He explained that the experience was traumatic and that he did not remember every moment of it but had no intention to mislead police in any way.

Carl Theriot, a paramedic with East Jefferson EMS, testified that he responded to a call about a man lying on the road in Kenner on June 27, 2021. He authored a report that detailed multiple injuries, including exposed tissue, and he documented an unstable mid-shaft tibia that Mr. Cooper was given 50 micrograms of Fentanyl for pain relief. He identified several photographs showing bruising on Mr. Cooper's shoulder, blood on his forearm and wrist, a bruise on his elbow, and confirmed that these images accurately represented Mr. Cooper's condition that night. In the photograph of Mr. Cooper's left leg, he identified some visible blood, but he did not document any specific injury and could not confirm if there was one. He also described the cut on Mr. Cooper's cheek as an abrasion.

Officer Billy Hingle of the Kenner Police Department testified that he responded to a call on June 27, 2021 about a man who may have been beaten and was asking for help in the 300 block of Alliance Street. Upon arrival, he recalled being flagged down and directed to Mr. Cooper on the side of the road. He observed wounds on Mr. Cooper's front leg, with visible tissue and blood, as well as marks on his knees. Mr. Cooper was lying on his back and appeared disoriented and unsure of what had occurred. Officer Hingle recalled Mr. Cooper could not provide clear information about the incident. When EMS lifted Mr. Cooper from

the ground, Officer Hingle discovered Mrs. Reed's business card stained with a red, blood-like substance.

A search warrant was obtained for the Airbnb. It was learned that the Airbnb owner rented the loft to Mrs. Reed for three days beginning June 25, 2021. During his search of the residence, Officer Hingle recalled smelling bleach and observing that the floor appeared recently mopped. He saw a red blood-like substance on the stair rails and similar splatters upstairs by the bed. Photographs were taken, and evidence was collected, including pillowcases and blankets from the washing machine. Swabs were collected from red, blood-like stains on the railing, near the bed, and other surfaces. Officer Hingle did not locate a gun, bat, knife, hammer, zip ties, or florescent ratchet straps inside the Airbnb.

After leaving the Airbnb, Officer Hingle drove north on Hollandey Street. Approximately a quarter mile from the Airbnb, he came upon a black Ford Fiesta with its flashers on. The car was parked parallel to the spot where Mr. Cooper was found on Alliance Street. Its license plate number confirmed that the vehicle belonged to Mr. Cooper. The vehicle was towed to the Kenner impound lot, where photographs were taken of the car. Mr. Cooper's wallet was recovered from the driver's floorboard, and the keys were found in the ignition.

Based on Mr. Cooper's identification of the assailants involved in the incident, Officer Hingle obtained arrest warrants for defendant and Mrs. Reed. It was suspected that they fled to North Carolina, as it was known they were out-of-state residents.

Sergeant Arthur Coll with the Kenner Police Department testified that he obtained a search warrant for DNA samples from defendant and Mrs. Reed, and buccal swabs were collected. He explained that the surrounding area was canvassed for surveillance footage. A condensed version of the surveillance video from Amato Motor Company, located at 322 Hollandey Street, was created, and

admitted into evidence.[2]  While this video played, Sergeant Coll identified defendant standing aside a Toyota Camry.  He confirmed the location depicted as the Airbnb at 1314 Lloyd Price, which had been rented by Mrs. Reed at the time of recording.  The time of 5:13 p.m. was displayed when the video recording began.  At 6:30 p.m., the recording captured Mr. Cooper's Ford Fiesta and Mrs. Reed wearing a yellow dress.  Defendant's car, driven by Mrs. Reed, appeared in the video at 7:35 p.m.  At 8:35 p.m., approximately two hours after Mr. Cooper arrived, defendant was seen getting Mr. Cooper's car and Mrs. Reed was seen exiting their vehicle.  Afterwards, the video recording captured Mr. Cooper's vehicle leaving the location, while defendant's vehicle remained.  Approximately eight minutes later, Mr. Cooper's car was driven away from the location.  He confirmed the video timestamps of Mr. Cooper's arrival at 6:37 p.m. and departure at 8:47 p.m.

Adriana Washington, a DNA analyst with the Jefferson Parish Sheriff's Office, testified regarding her analysis of a variety of evidence in the case. She stated that the results strongly indicated that Mr. Cooper was a contributor to the DNA obtained from the business card and from the blood on the railing of the bed. There was only moderate support that the blood evidence contained the DNA of defendant, while Ms. Reed was excluded from it entirely.  She explained that DNA can be wiped clean from surfaces using chemicals.

## ASSIGNMENTS OF ERROR

Assignment of Error Number One: Sufficiency of the Evidence

In his first assignment of error, defendant argues the evidence was insufficient to support his second-degree kidnapping conviction.  He contends that the State's evidence failed to prove that Mr. Cooper was injured during the

---

[2]  Christopher Amato, owner of Amato Motor Company, testified that the video surveillance camaras at his business were functioning and that he turned over footage to police in June 2021.

kidnapping or that defendant was armed with a dangerous weapon. Defendant further contends that the evidence failed to support the State's alternative theory— that the second-degree kidnapping occurred while defendant was armed with a dangerous weapon. In response, the State argues that the evidence was sufficient to support defendant's conviction for second-degree kidnapping. Additionally, the State contends that the evidence was sufficient to establish that the defendant was armed.

Reviewing the sufficiency of evidence requires an appellate court to determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact can be inferred according to reason and common experience. When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 provides that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." *State v. Rogers*, 23-558 (La. App. 5 Cir. 8/28/24), 2024 WL 3963969. This is not a separate test from the *Jackson* standard, but rather provides a helpful basis for determining the existence of reasonable doubt. All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. *Id*.

The directive that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to the actual trier of fact's rational credibility calls, evidence weighing, and inference drawing. This deference to the fact-finder does not permit a reviewing court to decide whether it believes a

witness or whether the conviction is contrary to the weight of the evidence. *State v. Aguilar*, 23-34 (La. App. 5 Cir. 11/15/23), 376 So.3d 1105, 1108. As a result, under the *Jackson* standard, a review of the record for sufficiency of the evidence does not require the reviewing court to determine whether the evidence at trial established guilt beyond a reasonable doubt but whether, upon review of the whole record, any rational trier of fact would have found guilt beyond a reasonable doubt. *Id.*

In making this determination, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence. Indeed, the resolution of conflicting testimony rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. *State v. Lavigne*, 22-282 (La. App. 5 Cir. 5/24/23), 365 So.3d 919, 940, *writ not considered*, 23-1119 (La. 10/10/23), 370 So.3d 1086.

Defendant was convicted of second-degree kidnapping. Though he was also charged with aggravated battery, the jury returned a guilty verdict for simple battery. In this assignment of error, defendant only challenges the sufficiency of the evidence for his second-degree kidnapping conviction.

At the time of the offense, the crime of second-degree kidnapping is set forth in La. R.S. 14:44.1, which, in pertinent part, provides:

> A. Second-degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
>> (1) Used as a shield or hostage;
>> (2) Used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony;
>> (3) Physically injured or sexually abused;

(4) Imprisoned or kidnapped for seventy-two or more hours, except as provided in R.S. 14:45(A)(4) or (5); or

(5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.

B. For purposes of this Section, kidnapping is:

(1) The forcible seizing and carrying of any person from one place to another; or

(2) The enticing or persuading of any person to go from one place to another; or

(3) The imprisoning or forcible secreting of any person.

The provisions of this statute apply when any one occurrence mentioned in Subsection (B) combines with any occurrence enumerated in Subsection (A). *State v. Humphrey*, 14-519 (La. App. 5 Cir. 11/25/14), 165 So.3d 937, 942.

On appeal, defendant emphasizes that Mr. Cooper's injuries and the presence of a dangerous weapon occurred *before* the acts constituting the kidnapping, specifically before Mr. Cooper was removed from the Airbnb and driven away in a vehicle. However, defendant's contention is misplaced. Actual movement from one place to another is not a required element of the offense. *State v. Hampton*, 17-383 (La. App. 3 Cir. 11/15/17), 259 So.3d 1125, 1131 (citing to *State v. Woodberry*, 14-476 (La. App. 4 Cir. 6/3/15), 171 So.3d 1082, *writ denied*, 15-1245 (La. 6/17/16), 192 So.3d 770). Rather, the State need only prove Mr. Cooper was imprisoned or secreted and was physically injured. The statute does not require that the imprisonment exist for any minimum period of time. Instead, the State only had to prove one act mentioned in Subsection (B) combined with any one act in Subsection (A). *Id.*

We find that the evidence presented at trial was sufficient to prove that defendant forcibly seized and carried Mr. Cooper from one place to another, imprisoned him, that Mr. Cooper was physically injured, and that defendant was armed with a dangerous weapon. The evidence showed that Mr. Cooper was

restrained inside of the Airbnb and was physically injured by defendant with a gun, aluminum bat, and knife, which meets the elements of second-degree kidnapping. *See* La. 14:44.1(A)(3), (A)(5), and (B)(3). Additionally, because Mr. Cooper was restrained, forced into his own vehicle, and then to another vehicle, and ultimately abandoned on the side of the road, there appears to be sufficient evidence to prove that he was forcibly seized and transported from one place to another under Subsection (B)(1). Jurors also could have reasonably determined, based on Mr. Cooper's testimony, that defendant was armed with a dangerous weapon when he used the knife to cut Mr. Cooper's restraints, resulting in physical injuries. *See* La. R.S. 14:44.1(A)(3) and (A)(5).

Defendant points to inconsistencies in Mr. Cooper's recollection of how he received his injuries and appears to question his recollection as to when he was bound and how long he was at the Airbnb. He maintains that there was a lack of physical evidence and medical records supporting Mr. Cooper's claims of serious injury. Further, defendant argues that the jury's rejection of the aggravated battery charge, based on similar claims, suggests they found Mr. Cooper's testimony unreliable. He contends that the State's alternative theory of second-degree kidnapping fails because the only evidence of a weapon came from Mr. Cooper's testimony, which he argues was rejected by the jury when he was convicted of the lesser crime of simple battery.

We reject defendant's contention and find the elements of the crime were met. The victim's testimony is sufficient to establish the "physically injured" element of second-degree kidnapping under La. R.S. 14:44.1. *State v. Brown*, 04-1113 (La. App. 5 Cir. 3/29/05), 901 So.2d 492, 497. The credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of a witness. *See Lavigne*, *supra.* In this case, after hearing Mr. Cooper's acknowledgement of inconsistencies in his account, the jury

made a credibility determination in finding that defendant hit Mr. Cooper numerous times with an aluminum bat, pistol-whipped him, and cut his face and wrists with a knife.

In light of the foregoing, considering the evidence presented at trial, including the testimony of the victim, we find that a rational trier of fact could have found that the evidence was sufficient under the *Jackson* standard to support defendant's conviction of second-degree kidnapping. This assignment of error is without merit.

### Assignment of Error Number Two: Denial of Motion to Sever

In his second assignment of error, defendant argues the trial court erred by denying his motion for severance from the co-defendant, Mrs. Reed. Defendant's motion for severance, based on antagonistic defenses, was twice urged to the trial court. The trial court denied defendant's motion in both instances.

Defendant argued in the first hearing of his motion for severance that Mrs. Reed, after failed plea negotiations with the State, indicated she would ask the trial court for a duress jury instruction. Mrs. Reed's defense of duress and/or compulsion, defendant argued, would directly contradict his self-defense claim. The trial judge denied the motion, finding no concrete evidence that Mrs. Reed would offer exculpatory testimony. In its reasoning, the trial court cited "*State v. Prudholm*" and "*State v. Coe*,"[3] emphasizing that severance is not an automatic right and that unsupported claims of antagonistic defenses are insufficient.

The second urging of his motion for severance was following a hearing on Mrs. Reed's motion to sever and motions requesting special jury instructions. After hearing Mrs. Reed's sworn testimony, and viewing video evidence depicting Mrs. Reed and defendant at the scene of the incident, the police report, and Mr.

---

[3] The full citation to these cases were not provided. It appears the judge was referring to *State v. Prudholm*, 446 So.2d 729, 741 (La. 1984) and *State v. Coe*, 09-1012 (La. App. 5 Cir. 5/11/10), 40 So.3d 293, 301, *writ denied*, 10-1245 (La. 12/17/10), 51 So.3d 17.

Cooper's statement, the trial court denied Mrs. Reed's request for a special jury instruction on compulsion. Defendant then re-urged his motion for severance, arguing the record demonstrated a clear antagonistic defense from Mrs. Reed. Specifically, defendant averred that his defense would be contradicted by Mrs. Reed's claim that her actions were under compulsion or duress. The trial court denied defendant's motion, finding severance inappropriate based on the evidence presented at the hearing.

The case proceeded to trial with the co-defendant's tried together. During a jury charge conference, the trial judge maintained her denial of Mrs. Reed's request for a compulsion instruction. After defendant's convictions, he filed a motion for new trial, which included an argument regarding the denial of his motion for severance. The trial court denied defendant's motion for new trial.

On appeal, defendant avers denial of his motion for severance was error because of the trial court's awareness of potential antagonistic defenses. He seeks a new trial.

La. C.Cr.P. art. 704 provides that jointly indicted defendants shall be tried jointly unless: (1) The state elects to try them separately; or (2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance. Whether justice requires a severance must be determined by the facts of each case. *State v. Hayden*, 09-954 (La. App. 5 Cir. 5/11/10), 41 So.3d 538, 543, *writ denied*, 10-1382 (La. 1/14/11), 52 So.3d 899.

A defendant is not entitled to a severance as a matter of right, but the decision is one resting within the sound discretion of the trial court. *State v. Prudholm, supra*, 446 So.2d at 741. The ruling on a motion to sever is within the sound discretion of the trial court and will not be overturned unless it is manifestly erroneous and injurious to the defendant. *State v. Molette*, 17-697 (La. App. 5 Cir.

10/17/18), 258 So.3d 1081, 1089, *writ denied*, 18-1955 (La. 4/22/19), 268 So.3d 304.

A severance is necessary if the defenses of the co-defendants are mutually antagonistic to the extent that one co-defendant attempts to blame the other, causing each defendant to defend against both his co-defendant and the State. *Prudholm, supra.* The defendant bears the burden of proof in a motion to sever. *Jackson, supra*; *State v. Coe*, *supra*, 40 So.3d at 301. Evidence required to support a severance based on antagonistic defenses must be more than a "mere unsupported allegation." *Prudholm, supra.* "Justice does not require severance where only the extent of participation of each defendant is at issue." *State v. Duckett*, 12-578 (La. App. 5 Cir. 5/16/13), 119 So.3d 168, 177, *writ denied*, 13-1383 (La. 1/17/14), 130 So.3d 340 (citing to *State v. Gaskin*, 412 So.2d 1007, 1012-13 (La. 1982)). Furthermore, the fact that each defendant has pointed a finger at the other does not make defenses automatically antagonistic. Prejudice must be shown if co-defendants are to receive separate trials. *State v. Williams,* 416 So.2d 914, 916 (La. 1982).

Addressing this assignment of error, we must consider the rulings on both a pre-trial motion and a post-trial motion concerning severance. "When a severance is sought before trial, the standard for obtaining a severance is broader because of the speculation as to what the trial evidence will actually be; after trial commences, the standard is stricter because at that time the trial judge is able to analyze the evidence which has actually been admitted." *State v. Foret,* 96-281 (La. App. 5 Cir. 11/14/96), 685 So. 2d 210, 224.

In reviewing a pre-trial motion for severance, the Louisiana Supreme Court directs that we review the evidence presented in the motion hearing; evidence which is presented at trial is not to be considered. *State v. Lavigne,* 412 So.2d 993, 997 (La. 1982). As to a motion for severance made after trial begins, reversal of a

conviction based on a denial of severance is warranted on finding that the defendant "would probably not have been convicted" at a separate trial. *Duckett*, 119 So.3d at 178.

In the instant case, defendant filed a Motion to Sever before trial. During the initial hearing on the motion, defendant argued that Mrs. Reed would seek a duress jury instruction. Defendant did not offer evidence in support of his pretrial motion for severance. Instead, he only made general arguments that the defenses presented at trial would be antagonistic. In denying the motion, the trial judge stated in part, "The defendant has not offered evidence in support of the severance." It does not appear that defendant's unsupported allegation that the defenses would be antagonistic was sufficient to require a severance.

When this motion was re-urged, defendant asserted Mrs. Reed's request for a compulsion jury instruction demonstrated a clear antagonistic defense. However, at the hearing, the trial judge denied Mrs. Reed's request for a compulsion instruction and maintained this ruling during trial. Defendant's assertion that the defenses would be antagonistic was merely an unsupported allegation, which was insufficient to require a severance in this case. Thus, we find that the trial judge did not abuse its discretion in denying the motion for a severance before trial in this case.

After his conviction, defendant cited denial of his motion for severance in support of his motion for new trial. The evidence presented at trial established that Mrs. Reed invited Mr. Cooper to the Airbnb in Kenner, where defendant assaulted him with a gun and aluminum bat, and assisted defendant with binding Mr. Cooper with zip ties. Mrs. Reed ignored the victim's requests for help. Even if defendant blamed his co-defendant and his co-defendant blamed him for the incident, this did not rule out the possibility that both defendants were involved and the issue was the respective roles in the crime committed by the two perpetrators.

Defendant fails to demonstrate that justice required a severance or that he was prejudiced by the joint trial. He relies on Mrs. Reed's requested compulsion instruction to support his claim of prejudice. However, the trial court denied her requested jury instruction. Further, Mrs. Reed did not testify at trial or present any evidence that exculpated her and inculpated defendant. Likewise, defendant did not testify at trial or otherwise blame Mr. Reed.

It appears from the record that defendant would have been faced with the same incriminating evidence of his guilt whether tried individually or jointly. At the conclusion of the trial, the jury returned guilty verdicts as to both defendant and Mrs. Reed for second-degree kidnapping, demonstrating that they found each legally culpable and did not believe only one defendant was responsible for the crime. Additionally, defendant has failed to demonstrate that Mrs. Reed would, in fact, testify at a separate trial or that she would exculpate him. Accordingly, we find defendant failed to show how he was prejudiced by the trial court's denial of the severance or the motion for new trial pertaining to the severance. This assignment of error lacks merit.

### Assignment of Error Number Three: Motion for New Trial

In his third assignment of error, defendant contends that the prosecution violated Louisiana law by failing to provide him with statements made by Mrs. Reed. On appeal, he avers that the State did not turn over statements given by Mrs. Reed which were inconsistent with another witness's accounts despite the clear requirements of La. C.Cr.P. art. 722. Defendant asserts those statements, if received, would have substantiated his need for a separate trial and he argues that the prosecution's actions violated his due process rights, necessitating a new trial.

The State responds that defendant's claim of a violation of La. C.Cr.P. art. 722 is unfounded, and the trial court correctly found that there were no written or

recorded statements made by Mrs. Reed that were subject to discovery. Therefore, the State argues, it complied with the requirements of La. C.Cr.P. art. 722, which covers only written or recorded statements.

Addressing the consistency of Mrs. Reed's statements with the victim's narrative, the State points out defendant's claims do not invoke application of La. C.Cr.P. art. 722. What is implicated by defendant's assertions are *Brady v. Maryland*,[4] *Kyles v. Whitley*,[5] and *Giglio v. United States*.[6] The State points out that on appeal, defendant does not challenge the trial court's denial of his motion for new trial on the ground that the State failed to comply with *Brady*, *Kyles*, and *Giglio*. The State concludes no relief is warranted on his claim that the State failed to comply with La. C.Cr.P. art. 722.

Prior to trial, defendant filed an Omnibus Discovery Motion(s), which included a Motion for Discovery and Inspection and a Motion for Production of *Brady*, *Kyles*, & *Giglio* Material. Pursuant to Article 721, defendant sought information regarding any statements made by co-conspirators or co-defendants, including any written or recorded confessions or inculpatory statements intended for use at trial. Defendant also requested that the trial court order the State to review its records and all relevant police and law enforcement files for *Brady, Kyles,* and *Giglio* material, asserting the State should disclose any materials that are favorable to him concerning the charges in this case.

On November 19, 2021, a Discovery Receipt and Stipulation for Reciprocal Discovery was filed. A February 7, 2022 minute entry reflects that a discovery status hearing was held, and discovery in this matter was marked satisfied. Various Discovery Receipts and Stipulations for Reciprocal Discovery were filed on the following dates: March 17, 2022; April 12, 2022; May 10, 2022; May 17,

---

[4] *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[5] *Kyles v. Whitley*, 514 U.S. 419, 433-34, 115 S.Ct. 1555, 1565-66, 131 L.Ed.2d 490 (1995).
[6] *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

2022; June 7, 2022; and July 7, 2022. On July 7, 2022, a minute entry also reflects that a discovery status hearing was held, and discovery in this matter was marked satisfied. An additional Discovery Receipt and Stipulation for Reciprocal Discovery was filed on November 7, 2022.

As addressed in the prior assignment of error, defendant's Motion to Sever and the subsequent hearing revealed that Mrs. Reed had engaged in plea negotiations with the State to testify against defendant.

Following his conviction, defendant filed a motion for a new trial wherein he generally alleged that the trial court should grant him a new trial pursuant to La. C.Cr.P. art. 851. He asserted that the State did not disclose any information under *Brady*, *Kyles*, or *Giglio* before trial, and argued that Mrs. Reed and her counsel met with the State twice before trial. In those meetings, it is alleged that Mrs. Reed provided statements and answered questions which were not disclosed to defendant but were believed to be inconsistent with Mr. Cooper's recorded statement and trial testimony. Defendant argued the statement should have been disclosed because of those significant discrepancies. Additionally, he argued that even if the court accepts that Mrs. Reed's statements were consistent with Mr. Cooper's, they should still have been disclosed under La. C.Cr.P. art. 722. He contended that regardless of whether Mrs. Reed's statements were consistent or inconsistent with Mr. Cooper's, the State committed an egregious discovery violation by failing to disclose them.[7]

On October 10, 2023, a hearing was held on the motion for new trial. Defense counsel stated that he submitted on the motion but reserved his right for rebuttal. The State argued in pertinent part as follows:

---

[7] In the motion for new trial, defendant also argued that there was other information that constituted a violation pursuant to *Brady*, *Kyles*, and *Giglio*. Defendant asserted that Mr. Cooper's trial testimony differed significantly from his prior statement, and the State's failure to disclose these inconsistencies beforehand disadvantaged the defense. However, this issue was not pursued on appeal.

> The only substantive issue that I would argue before the Court is one of the basis [sic] for the Motion for New Trial, namely the statements made by Mishanda Reed. Judge, the reason that either of those attempts and a proffer took place is because she was consistent in her accounting of the facts provided by the State's victim. They were entirely consistent such that I would have been willing to negotiate an agreed upon deal whereby she flipped and testified against her husband. As such, we did engage in a second meeting with her. There was nothing in violation of *Brady*, *Kyles*, or *Giglio* that necessitated a disclosure to counsel for Malcolm Reed based on the things that we learned during those Interviews with Co-Defendant Mishanda Reed.

The State acknowledged their obligations and compliance but emphasized that there was no need to do so in this case. The State contended that it would not have engaged with Mrs. Reed if she had not consistently presented the same facts as those provided by the victim, Mr. Cooper.

Defendant argued that La. C.Cr.P. art. 722 required disclosure of the statements. The State's failure to disclose, the defendant argued, prevented verification of their consistency and was prejudicial to his motion for severance. Defendant asserted that the court should have been informed about Mrs. Reed's meetings with the State's trial team and claimed that this omission constituted a serious discovery violation, regardless of the statements' consistency.

The State countered that there was no discoverable information that needed to be shared with the defense. The State explained that if Mrs. Reed had accepted a plea deal, any relevant details would have been disclosed and approved by the court. The State contended that there was no obligation to inform defendant's counsel about the information obtained during the "proffered sessions" with Mrs. Reed's co-counsel.

The trial judge denied the motion for new trial, explaining that it addressed allegations related to *Brady, Kyles, Giglio*, as well as statements made by Mr. Cooper. The trial judge noted that the State reported it had no written statements

from Mrs. Reed, and thus, there was nothing to disclose. Defense counsel objected.

On appeal, defendant's argument focuses on statements made by Mrs. Reed to the State during plea negotiations prior to trial. The statutory provision at issue is La. C.Cr.P. art. 722, which provides for confessions and statements of co-defendants as follows:[8]

> Upon written motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph, or otherwise reproduce any written or recorded confessions or statements made by a codefendant.

It is within the trial court's discretion to choose an appropriate remedy for a discovery violation that will offset any possible prejudice. The State's failure to comply with discovery procedures does not automatically require reversal. The appellate court must examine the circumstances of the case to determine whether the defendant was prejudiced and whether any prejudice resulting from the State's non-compliance with discovery procedure caused the trier of fact to reach the wrong conclusion. *State v. Williams*, 12-305 (La. App. 5 Cir. 5/16/13), 119 So.3d 131, 144-45, *writ denied*, 13-1338 (La. 12/6/13), 129 So.3d 529.

In *State v. Smith*, 99-1020 (La. App. 5 Cir. 2/29/00), 757 So.2d 74, 77-78, *writ denied*, 00-1017 (La. 3/30/01), 788 So.2d 439, and *writ denied sub nom. State ex rel. Smith v. State*, 01-854 (La. 11/21/01), 802 So.2d 631, this Court explained:

---

[8] Prior to January 2014, the law stated:

> Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph or otherwise reproduce any relevant written or recorded confessions or inculpatory statements made by a codefendant and intended for use at trial. Exculpatory evidence shall be produced under this article even though it is not intended for use at trial.

In 2013, the legislature amended La. C.Cr.P. art. 722 in La. Acts 2013, No. 250 § 1. The new La. C.Cr.P. art. 722 retains defendant's right to obtain written or recorded confessions or statements made by a co-defendant. Under the new law, a written motion is required. Also, the limitations that the statements be inculpatory or the State must intend to use the statement at trial have been removed. *See* § 14:3. Discovery—By defendant, n. 22, La. Prac. Crim. Trial Prac. § 14:3 (4th ed.).

The discovery rules are intended to eliminate unwarranted prejudice which could arise from surprise testimony and evidence, to permit the defense to answer the State's case, and to allow the defendant to properly assess the strength of the State's evidence in preparing a defense. When the defendant is lulled into a misapprehension of the strength of the State's case through the prosecution's failure to disclose timely or fully, and the defendant suffers prejudice when the undisclosed evidence is used against him, basic unfairness results which constitutes reversible error. However, a conviction will not be reversed on the basis of a discovery violation unless prejudice is shown by the trial court's adverse ruling.

It appears details surrounding Mrs. Reed's statements during her plea negotiations with the State are limited based on the record. The record reflects that Mrs. Reed engaged in plea negotiations to testify against defendant. At the motion to reconsider hearing, the State represented that Mrs. Reed's statements were consistent with the facts provided by the victim. However, the State's reference to a "proffer took place" was not clearly explained. The content of Mrs. Reed's statements was not disclosed. Additionally, it is unknown how defendant's attorney became aware of these statements or when exactly the plea negotiations occurred.

Nonetheless, there is no showing by defendant that Mrs. Reed gave any written or recorded confessions or statements to the State. Under the circumstances presented, there is no showing that the State failed to comply with La. C.Cr.P. art. 722. *See State v. Clements*, 519 So.2d 236 (La. App. 5 Cir. 1988) (where the defendant cited to La. C.Cr.P. art. 722 and complained that an individual was a co-defendant within the article's meaning and intent and consequently his inculpatory statement should have been brought to the attention of defense counsel. This Court stated that he did not, as far as the record shows, give any written or recorded statement, inculpatory or otherwise, and accordingly, it found there was no showing that the individual was responsible for any La.

C.Cr.P. art. 722 written or recorded confessions or statements).[9]  Also, the record in this case does not reflect any manner in which defendant might have been lulled into a misapprehension of the strength of the State's case.  Further, Mrs. Reed did not testify at trial.  Accordingly, we find that defendant has not demonstrated that he was prejudiced by the fact that he did not receive any statements before trial. *See Bradstreet, supra.*  As such, this assignment of error lacks merit.[10]

Assignment of Error Number Four:
Denial of Due Process: Right to Cross Examine

In his fourth assignment of error, defendant argues that the trial court violated his right to confrontation by impermissibly restricting his ability to impeach Mr. Cooper's testimony.  Defendant avers that his right to present a complete defense was violated when the trial court prevented him from using mobile phone records which were crucial for impeaching Mr. Cooper's credibility.  He contends the records showed calls made after Mr. Cooper claimed defendant denied him access to his phone.

Mr. Cooper's certified mobile phone records were obtained by *subpoena duces tecum* and were property entered into the record.[11]  On appeal, defendant contends the trial court erroneously sustained the State's objection to use of those records to cross-examine Mr. Cooper.  This, he argues, violated La. C.E. art. 607, which allows for the use of extrinsic evidence for impeachment and his constitutional right to present a defense.

---

[9] This case was decided under the prior version of La. C.Cr.P. art. 722 in effect in 1988.  It appears that the language of "written or recorded" in the statute was the same in these cases.  Further, the State has no obligation to disclose information that it does not possess.  *State v. Joekel*, 19-334 (La. App. 5 Cir. 12/20/19), 2019 WL 7044739, at *1, *writ denied*, 20-86 (La. 1/14/20), 286 So.3d 430.

[10] On appeal, defendant's argument in this assignment of error centers only on the State's failure to comply with statutory discovery rules.  As mentioned, defendant raised a *Brady* challenge in his motion for new trial, though he does not challenge this basis on appeal.

[11] On November 3, 2022, defendant filed a Motion for Issuance of Subpoena Duces Tecum requesting a complete and certified copy of all information for the cell phone number 832-***7796 from October 12, 2020 to October 18, 2020, and June 26, 2021 to July 2, 2021.  This included customer/subscriber information, call detail records, cell site and location information, historical location data, and all text and MMS messages.  The motion was granted on November 7, 2022.

The State replies that the trial court correctly sustained its objection to defendant's attempted use of the certified phone records to cross-examine the victim. At trial, defendant argued that the records were intended to refresh the victim's recollection, not to impeach him. On appeal, as the State points out, defendant argues the trial court's decision violated La. C.E. art. 607 and his constitutional right to present a defense. The State asserts that defendant failed to preserve this argument properly under La. C.Cr.P. art. 841, and even if there was an error, it would be harmless. Additionally, the State contends that the timing of the victim's arrival at the Airbnb was established by credible evidence, specifically a surveillance video showing the victim arriving at 6:36 p.m. It maintains that this video provided the accurate time, making any additional evidence from the records cumulative and not affecting the trial's outcome.

Mr. Cooper testified on direct examination that he believed the time of his arrival at the Airbnb to be approximately 5:00 or 5:30. On cross-examination, Mr. Cooper was questioned about discrepancies between his trial testimony and statements to police. Specifically, Mr. Cooper was asked if he recalled telling police that he arrived at the Airbnb at 5:50 p.m., which was the time he sent a text message. When asked if he would like to change his testimony, Mr. Cooper said he would accept 5:30 p.m. if that was his earlier statement but maintained that 5:50 p.m. was an approximate time.

Afterwards, the trial court granted defendant's request to broadcast Mr. Cooper's statement to police to the jury. Cross-examination continued, with Mr. Cooper being asked whether he had told two officers on July 1, 2021, with certainty that he arrived at the Airbnb at 5:50 p.m. because he had sent a text at that time. Mr. Cooper confirmed that he had told the officers it was 5:50 p.m., and testified that statement was made to the best of his recollection. After Mr. Cooper denied reviewing surveillance video or his own phone records from the date of the

incident, he confirmed making a phone call to Mrs. Reed at the exact time of his arrival to the Airbnb. Defendant then sought to present Mr. Cooper with his phone records, arguing they would reveal his exact time of arrival. The State objected on grounds that Mr. Cooper was neither the author, custodian, nor record keeper of the document. In arguing against the objection, defendant explained the document would refresh the witness's recollection and was not being used for impeachment purposes. The judge ruled that the document was not appropriate for refreshing the witness's recollection and sustained the objection.

Later, outside the presence of the jury, defendant made a proffer for the record, explaining that Mr. Cooper's phone records were subpoenaed to use as evidence in the case. He argued that the time of Mr. Cooper's arrival and his phone calls to Mrs. Reed became relevant during cross-examination. The trial court's ruling on the State's objection, defendant argued, prevented him from verifying Cooper's time of arrival to the Airbnb. Mr. Cooper's cell phone records were proffered and marked as "Malcolm Reed-Proffer-1."

In his motion for new trial filed on October 8, 2023, defendant argued that the court erred in limiting defense counsel's cross-examination of Mr. Cooper concerning the certified copy of his cell phone records. The trial court acknowledged all of defense counsel's arguments, including those regarding the cross-examination, but denied the motion for a new trial on October 10, 2023.

The Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution the right to be confronted with the witnesses against him. *State v. Jackson*, 03-883 (La. App. 5 Cir. 4/27/04), 880 So.2d 841, 852, *writ denied*, 04-1399 (La. 11/8/04), 885 So.2d 1118. The Confrontation Clause of the Louisiana Constitution expressly guarantees the accused the right "to confront and cross-examine the witnesses against him." La. Const. art. I, § 16; *State v. Robinson*, 01-273 (La. 5/17/02), 817 So.2d 1131, 1135. Confrontation

means more than the ability to confront the witnesses physically. The main and essential purpose is to secure for the opponent the opportunity of cross-examination. *Id.*

Cross-examination is the primary means by which to test the believability and truthfulness of the testimony and has traditionally been used to impeach or discredit the witness. *Id.* However, the extent of cross-examination is not without limitation. In order for evidence to be admissible at trial, it must be relevant. *State v. Stevenson*, 13-156 (La. App. 5 Cir. 7/30/13), 121 So.3d 792, 794, *writ denied,* 13-2025 (La. 2/28/14), 134 So.3d 1175. The determination regarding the relevancy of tendered evidence, and therefore the scope and extent of cross-examination, is within the discretion of the trial judge, whose ruling will not be disturbed absent an abuse of discretion. *Id.*

Relevant evidence is any "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La. C.E. art. 401. All relevant evidence is admissible, except as otherwise provided by law. La. C.E. art. 402. However, even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La. C.E. art. 403. *Stevenson*, *supra.*

The criminal defendant's constitutional right to present a defense does not require a trial court to admit evidence that is irrelevant or has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. *Stevenson, supra.* "When the trial court excludes evidence, such as witness testimony, error may not be predicated upon a ruling unless a substantial right of the party is affected, and the substance of the evidence was made known to the court by counsel." La. C.E. art. 103. *See also State v.*

*Massey*, 11-358 (La. App. 5 Cir. 3/27/12), 97 So.3d 13, 28, *writ denied sub nom.*
*State ex rel. Massey v. State*, 12-993 (La. 9/21/12), 98 So.3d 332.

At trial, defendant argued that Mr. Cooper's cell phone records were intended to refresh his recollection, not for impeachment. A proffer was made in accordance with La. C.E. art. 103. Now, on appeal, defendant appears to contend that the records would have impeached Mr. Cooper's testimony by disproving his claim of being denied his phone at the Airbnb. He generally argues that excluding the records impeded his right to present a defense and cross-examine his accuser. However, the trial court deemed the records unsuitable for refreshing the witness's recollection and did not consider them for impeachment purposes.

Regardless of the basis, the trial court did not abuse its discretion by excluding the evidence during the cross-examination of Mr. Cooper. A review of the billing statements in the proffered exhibit ("Malcolm Reed Proffer-1") shows phone calls on June 27 at 5:45 p.m., 6:05 p.m., 6:28 p.m., and 6:34 p.m. Other calls were made earlier that day but these calls are not pertinent to this case. No additional calls appear until July 1. The cell phone records do not support the claim that Mr. Cooper had his phone with him during his time at the Airbnb. Although Mr. Cooper testified that he arrived at 5:00 or 5:30 p.m., the surveillance video, already shown to the jury, indicated he actually arrived at 6:37 p.m. Therefore, the cell phone records do not necessarily prove he had his phone during the incident at the Airbnb. Further, on appeal, other than stating that his cross-examination was impeded, defendant does not state how the trial court's ruling regarding the cell phone records denied him his right to present a defense.

Even assuming that the trial court's aforementioned evidentiary ruling was improper, erroneous exclusion of evidence is subject to harmless error review. "Under that test, the question is whether there is a reasonable possibility that the admission or exclusion of certain evidence 'might have contributed to the

conviction.' Furthermore, the error must be 'harmless beyond a reasonable doubt.'" *State v. Willis*, 55,165 (La. App. 2 Cir. 6/28/23), 367 So.3d 948, 957. Here, the record does not suggest that the denial of defendant's request to admit the cell phone records led to his conviction. Both of Mr. Cooper's statements to police officers were played for the jury, who also heard his trial testimony. Additionally, Mr. Cooper was extensively cross-examined about inconsistences between his statements and his trial testimony. Mr. Cooper explained that the event was traumatic and he did not remember every moment. As briefly mentioned, at trial, the defense sought to use the cell phone records to argue that Mr. Cooper was on the phone with Mrs. Reed at 6:34 p.m., which conflicted with his claimed arrival time at the Airbnb. However, the jury reviewed surveillance footage showing Mr. Cooper's Ford Fiesta first appearing in the area at 6:30 p.m. and Mr. Cooper actually arriving at 6:37 p.m. Thus, the jury was presented with this evidence addressing the inconsistency in Mr. Cooper's arrival time. Accordingly, we find that any error by the trial court in excluding the cell phone records was harmless beyond a reasonable doubt. For the foregoing reasons, we conclude that defendant's claim in this assignment lacks merit.[12]

Assignment of Error Number Five: Excessive Sentence

In his fifth assignment of error, the defendant argues that the trial court's sentence is constitutionally excessive. He argues the severity of the sentence is disproportionate to his actions, that the sentence unfairly impacts his dependents, ignores mitigating factors, and overlooks his lack of criminal history, positive community contributions, and genuine remorse. Additionally, he claims the court relied on facts rejected by the jury, such as the use of a weapon, penalized him for

---

[12] Defendant only mentions his motion for new trial, and he does not focus his argument on the denial of this motion.

exercising his right to a trial, and dismissed supportive letters.  Finally, he argues that the thirteen-year sentence is disproportionate, especially given the jury's verdict for a less severe offense.[13]

The State responds that defendant's thirteen-year sentence, with two years without parole, probation, or suspension, is within the statutory range of five to forty years for second-degree kidnapping and is not excessive.  The State argues that the sentence is significantly below the maximum allowed and was determined after considering the serious nature of the crime, the impact on the victim, and the defendant's lack of accountability.

On October 11, 2023, defendant filed a sentencing memorandum arguing for a deviation from the mandatory minimum sentence pursuant to *State v. Dorthey*, 623 So.2d 1276 (La. 1993).  In it, defendant admitted to making poor decisions related to his wife's affair, but argued these do not define his character. Defendant's memorandum also pointed out his achievements, including overcoming financial challenges through education, playing professional basketball, and establishing D3 Community Outreach, Inc. and HA Prep Academy. He argued several mitigating factors: defendant's conduct did not cause serious harm; he acted under provocation and did not foresee significant harm; he has no prior criminal record and has led a life of exemplary community service; his actions resulted from unique circumstances unlikely to recur; and imprisonment would cause excessive hardship to his dependents and his non-profit work.  In his conclusion, defendant asked for "the minimum sentence of five (5) years incarceration, with three (3) suspended followed by a term of probation."

At the October 13, 2023 sentencing hearing, defendant's letter to the trial court regarding his childhood and history was admitted into evidence.  Defendant

---

[13] Defendant's arguments on appeal and below focused on his sentence for second-degree kidnapping.  He does not appear to challenge his sentence on simple battery.

also made a statement to the court acknowledging full responsibility for his actions on June 27, 2021, which he attributed to poor judgment and discovering his wife's affair. He requested the court consider his community contributions and expressed remorse to Mr. Cooper, the jury, his community, and his wife. He sought forgiveness, hoped for personal growth, and requested a sentence below the guidelines to continue his community work and prevent future mistakes.

Afterward, the State then questioned defendant about various aspects of the incident, including his discovery of the affair, the trip to New Orleans, his actions outside and inside the Airbnb, and his subsequent interactions with Mrs. Reed and Mr. Cooper. Defendant explained his decisions leading up to and following the incident, including his use of a bat, his handling of Mr. Cooper's car keys, and the communication with Mrs. Reed during and after the trial.

In his victim impact statement, Mr. Cooper expressed gratitude to the court, the State, and first responders. He detailed the emotional impact of the premeditated ambush, including fear, anxiety, and PTSD, along with the burdens of medical bills, lost wages, and increased security measures. He also discussed the strain of caring for his mother with Alzheimer's. Despite his truthful testimony, he remained troubled by unanswered questions and requested that the court address the "craven behavior" of the incident.

Prior to sentencing, the trial judge explained that she took into consideration the defendant's sentencing memorandum, the attachments, and La. C.Cr.P. art. 894.1. The judge observed that the memorandum inaccurately described events, such as incorrectly stating that defendant returned to the Airbnb to find Mrs. Reed with her boyfriend, despite evidence showing he never left. It also falsely suggested Mr. Cooper claimed his injuries were caused by being thrown from a car, a claim he never made. The trial judge found that this misinformation did not undermine Mr. Cooper's credibility with the jury. Additionally, the judge found

issues with the attached letters, stating they were mostly unsigned and contained misspellings of defendant's name, which raised doubts about their authenticity.

The trial judge reviewed the factors pursuant to La. C.Cr.P. art. 894.1 and determined that a probationary sentence below the statutory minimum of two years at hard labor was not appropriate. Additionally, the trial judge thoroughly reviewed and discussed multiple factors, including the severity of the offense, the nature of defendant's conduct, and the impact on the victim. For these reasons, the judge sentenced defendant to thirteen years imprisonment at hard labor, with the first two years to be served without the benefit of parole, probation, or suspension of sentence for count one. For count three, the court sentenced defendant to six months in Jefferson Parish Correctional Center. This sentence was ordered to run concurrently with the sentence as to count one. Defense counsel orally objected to the sentence.

On October 16, 2023, defendant filed a motion for reconsideration arguing that the thirteen-year sentence is excessive. In it, he cited his lack of criminal history and positive community contributions, and emphasized his remorse and responsibility, arguing that the court downplayed this. Defendant contended that the sentence is excessive given the charges and evidence and requested consideration of mitigating factors under La. C.Cr.P. art. 894.1.

At the October 20, 2023 hearing, in support of his motion, defendant averred that the sentence was too severe, arguing the factors raised in his motion. The State countered that the sentencing range set by the legislature is five to forty years and that the court had already considered defendant's partial responsibility and community contributions in determining the sentence. Following these arguments, the trial judge denied the motion, noting the imposed sentence to be less than half of the maximum, and found it neither excessive nor warranting reconsideration.

The Eighth Amendment to the U.S. Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense, or imposes needless and purposeless pain and suffering. *State v. Adams*, 23-427 (La. App. 5 Cir. 4/24/24), 386 So.3d 676, 683.

According to La. C.Cr.P. art. 881.4(D), the appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. In reviewing a sentence for excessiveness, the reviewing court shall consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court's sense of justice, while recognizing the trial court's wide discretion. *Adams*, *supra*. In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. However, there is no requirement that specific matters be given any particular weight at sentencing. *State v. Kelson*, 23-274 (La. App. 5 Cir. 12/27/23), 379 So.3d 779, 784-85.

A trial court should consider the defendant's personal history such as age, family ties, marital status, health, employment record, as well as his prior criminal record, seriousness of offense and the likelihood of rehabilitation in determining an appropriate sentence. *Adams*, 386 So.3d at 686. A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case and therefore is given broad discretion when imposing a sentence. *State v. Barnes*, 23-208 (La. App. 5 Cir. 12/27/23), 379 So.3d 196, 204.

Defendant only challenges the constitutional excessiveness of his second-degree kidnapping sentence, not his sentence for simple battery. The penalty for second-degree kidnaping is imprisonment at hard labor for not less than five nor

more than forty years.  At least two years of the sentence imposed shall be without benefit of parole, probation, or suspension of sentence.  La. R.S. 14:44.1(C).  The record reflects that at the sentencing hearing, the trial court imposed a term of imprisonment of thirteen years at hard labor without benefit of parole, probation or suspension of sentence for two years.  Thus, this sentence is less than half the maximum allowed by the statute.

As to the nature of the crime, the evidence at trial demonstrated that Mr. Cooper was assaulted and restrained at an Airbnb by defendant and Mrs. Reed before being abandoned on the road.  Mr. Cooper was invited to the Airbnb by Mrs. Reed, where defendant was present and armed with a gun, an aluminum bat, and eventually a knife.  Defendant proceeded to threaten and physical assault Mr. Cooper, hitting him multiple times with the baseball bat, pistol-whipping him with the gun, and later cutting him on his face with a knife.  During the incident, Mr. Cooper begged Mrs. Reed for help.  Afterward, Mr. Cooper was forced into his own car, then transferred to Mrs. Reed's car, and eventually abandoned on the road after defendant cut his restraints.  He received assistance from a passing truck driver who called the police, and he was hospitalized with injuries and admitted to the ICU.

Mr. Cooper testified that he has a chipped tooth, a major scar on his leg, and visible scars on his wrists and cheeks from the incident.  Also, the judge considered Mr. Cooper's victim impact statement, in which he described severe emotional distress and financial burden as a result of the incident.  He explained the additional strain of caring for his mother with Alzheimer's and expressed concern over unanswered questions about the incident.  He urged the court to address the behavior involved.

The trial judge reviewed La. C.Cr.P. art. 894.1 factors and concluded that a probationary sentence was unsuitable due to the seriousness of the crime,

deliberate cruelty, and significant impact on the victim. Specifically, the trial judge mentioned aggravating factors included the use of a baseball bat, the presence of bloody items, and defendant's immediate flight from the scene, among other reasons.

When considering the nature and background of the offender, it appears defendant is a first-time offender based on the record. The defense stated in the sentencing memorandum that defendant took responsibility for and regretted his actions, which he also expressed in his court statement. In addition, the trial judge provided that she had reviewed the letters written in support of defendant. The trial judge considered several mitigating factors, including defendant's provocation discovering his wife's affair, his lack of prior criminal history, and his unawareness of the serious harm his actions could cause. Despite defendant's assertions that the court did not adequately consider such factors like his lack of criminal history, supportive letters, and the impact of imprisonment on his dependents, it appears the trial judge thoroughly reviewed these aspects. The trial judge found defendant's general law-abiding background and the supportive letters to be insufficient to outweigh the seriousness of the offense and the deliberate cruelty involved. Additionally, the trial judge considered the impact on defendant's dependents but concluded that a lesser sentence would not reflect the crime's severity or uphold justice.

Lastly, the third factor requires consideration of sentences imposed for similar crimes by this Court and other courts. "Although a comparison of sentences imposed for similar crimes may provide guidance, '[i]t is well settled that sentences must be individualized to the particular offender and to the particular offense committed.'" *Adams*, 386 So.3d at 687.

Jurisprudence shows similar situated defendants convicted of second-degree kidnapping have received comparable or harsher sentences. The present case,

however, appears more severe due to defendant's use of a gun, knife, and baseball bat during the offense, which intensifies the gravity of the crime compared to these other cases. *See State v. Mathieu*, 06-946 (La. App. 5 Cir. 5/29/07), 960 So.2d 296, 308-10, *writ denied sub nom. State ex rel. Mathieu v. State*, 07-1424 (La. 2/1/08), 976 So.2d 714, (where this Court upheld a first-time offender's thirty-year sentence for second-degree kidnapping despite his stable work history and his status as a father of four. The defendant, armed with a gun, forced his ex-wife into her car, drove her to Mississippi while threatening to kill himself, and eventually returned to Gretna, were she escaped without physical harm); *State v. Washington*, 95-771 (La. App. 5 Cir. 2/14/96), 670 So.2d 1255, 1261-62, *writ denied*, 98-537 (La. 9/25/98), 726 So.2d 7, (where the defendant's maximum forty-year sentence for second-degree kidnapping was upheld. The defendant and a companion threatened the victim with a gun, forced him into his own car, and drove him to his girlfriend's apartment, where they committed aggravated burglary.)[14]

The relevant question on appeal is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. The sentence imposed should not be set aside as excessive in the absence of a manifest abuse of discretion. *Kelson*, *supra*. Considering the foregoing, defendant's thirteen-year sentence for second-degree kidnapping is not excessive. Defendant received a sentence that is less than half the maximum allowed by the statute. The trial judge did not abuse her discretion by imposing this sentence. This assignment of error lacks merit.

---

[14] *See also State v. Brown*, 41,883 (La. App. 2 Cir. 4/4/07), 956 So.2d 53 (a nineteen-year-old first-felony offender's twenty-year sentence for second-degree kidnapping was found not to be excessive where the defendant used a gun and threatened the lives of three victims); *State v. Sullivan*, 41,236 (La. App. 2 Cir. 8/23/06), 939 So.2d 516, 518 (where the defendant forcibly pushed his ex-girlfriend into her trailer, hit her with a gun, and fired at her, missing. Despite a pre-sentencing report recommending a longer sentence, the defendant received a fifteen-year sentence for second-degree kidnapping, the same as the plea bargain offer).

*Assignment of Error Number Six: Errors Patent Review*

In his final assignment of error, defendant requests an error patent review. The record was reviewed for errors patent in accordance with La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990). Our review reveals one error patent requiring addressing.

Based on the record, defendant received an incomplete advisal regarding the applicable prescriptive period for seeking post-conviction relief. La. C.Cr.P. art. 930.8 provides that a defendant shall have two years after the judgment of conviction and sentence has become final to seek post-conviction relief. The law provides that if a defendant receives incomplete advice of the period for seeking post-conviction relief, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief in its opinion. *State v. Britton*, 22-476 (La. App. 5 Cir. 5/10/23), 366 So.3d 652, 665.

Accordingly, by way of this opinion, we hereby advise defendant that no application for post-conviction relief, including applications that seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922.

**DECREE**

For these reasons, defendant's conviction and sentence for second-degree kidnapping is affirmed.

**CONVICTION AND SENTENCE AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 30, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

# 24-KA-59

## E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE SHAYNA BEEVERS MORVANT (DISTRICT JUDGE)
JULIET L. CLARK (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          AUTUMN A. TOWN (APPELLANT)
GRAHAM L. BOSWORTH (APPELLANT)

## MAILED
HONORABLE PAUL D. CONNICK, JR.
(APPELLEE)
DISTRICT ATTORNEY
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053